THE HUGO STEIN CLOAK CO., APPELLANT, *v.* THE S. B. STEIN & SON, INC., APPELLEE.

(Decided December 27, 1937.)

*Messrs. Marshall, Melhorn, Davies, Wall & Bloch* and *Mr. W. A. Belt*, for appellant.

*Messrs. Levison & Levison* and *Mr. Joseph B. Beckenstein*, for appellee.

OVERMYER, J.   The appellant, The Hugo Stein Cloak Company, a domestic corporation having its place of business in a five-story building at 602 Adams street, at the corner of Adams and Huron streets, fronting on Adams street, in the city of Toledo, Ohio, and engaged in the retail sale of clothing for women and misses, seeks to restrain by this suit The S. B. Stein & Son, Inc., also a domestic corporation, having its place of business at 612 Adams street in that city, in a 20-foot front, two-story building, four doors west of appellant's main entrance, and engaged in the retail sale of diamonds and jewelry, from "using the term 'Stein's' in the city of Toledo and vicinity insofar as it uses the same in advertising, in marking its products and in

other uses made of said trade name in its business * * * and from in any way or manner, directly or indirectly, making use of the term 'Stein's,' and for an accounting of profits that defendant may have made by reason of unfair competition in trade * * *.''

It appears from the pleadings and the record that the operative facts are practically undisputed, and these will be somewhat fully set forth herein. Cases of this character especially are to be determined from the particular facts, the law being quite clearly defined in the hundreds of reported cases on the subject of trade marks, trade names, and unfair competition in trade, both in our state reports and in federal reports, as well as in several authoritative text books on the subject.

Both parties hereto began business in Toledo, Ohio, about 1906, the appellant under its present corporate name; the appellee under the name of ''S. B. Stein'' and later ''S. B. Stein & Son'' and ''S. B. Stein & Son, Jewelers.'' The appellant was in business on another street, Summit street, a number of blocks from its present location, until May, 1931, when it erected a building and moved to its present location. The appellee has been in business at its present location since 1906, but, as above stated, under various names, its present name of The S. B. Stein & Son, Inc., being taken in December, 1931, when the corporation was formed, seven months after appellant moved to its present location nearby. Prior to incorporation, appellee conducted the business as a partnership with his son, and prior to that as an individual under the name S. B. Stein or S. B. Stein, Jeweler. The appellee's family name was Beckenstein, but was changed by him to Stein at the time of his naturalization about 1906.

The appellant during its business career has handled costume jewelry, but discontinued this line before moving to its present location. It is conceded that the

lines of business of the parties are not competing lines.

Shortly after appellant began business it began to use the word "Stein's" as a trade mark and trade name, and has ever since so used it, by means of signs, labels, posters, shopping bags, parcel wrappers, newspaper advertising, etc., in all of its solicitations and dealings with local customers and trade, and appellant has spent more than a million dollars in advertising that name in a particular form, viz., the word "Stein's," in the area from which it draws its retail trade. In 1936 appellant had the word "Stein's" registered as a trade mark in Ohio.

The appellee never used the single word "Stein's" as a trade mark or trade name in any signs, labels, posters or newspaper advertising, without other distinguishing and explanatory matter, until the fall of 1936, when it remodeled its store front and it then erected two neon electric signs bearing the single word "Stein's," one large sign bearing that word only across the front of its store, and another smaller neon sign bearing that word on top of a large clock on a post near the edge of the sidewalk in front of its store. On the face of the clock in smaller, black-painted letters, appeared the word "Jewelers." The name used on the signs referred to, in the style of letters used and general appearance, bears a striking resemblance to the style of letters used and general appearance of appellant's signs, except that they are neon electric signs while the signs on appellant's store front are of metal letters, not illuminated, which spell the word "Stein's," and that word is also painted on the awnings and appears on metal plates in appellant's show windows. In newspaper advertising and otherwise, where appellant uses its trade name, the words "Adams at Huron" are added.

Prior to the fall of 1936, the appellee's newspaper display advertising was printed with the name "S. B.

Stein, Jeweler'' or ''S. B. Stein & Son,'' or ''S. B. Stein & Son, Jewelers'' prominently displayed therein. Beginning in the fall of 1936 their advertising carried the single word ''Stein's'' prominently displayed at the top of the advertisement in large letters, and the words ''S. B. Stein & Son, Jewelers, 612 Adams street, between Erie & Huron'' or ''S. B. Stein & Son, 612 Adams street between Erie & Huron'' in small letters at the bottom of the advertisement, accompanied by cuts of the father and son.

There is evidence that a number of persons have come into appellant's store, beginning in the fall of 1936, and inquired for jewelry, whereupon they were directed to appellee's store. Four of appellant's employees testified to a number of instances of confusion in this respect, but whether the persons came there as a result of confusion of names or because they thought appellant had taken over appellee's store or had a jewelry department in its store, does not clearly appear, although some of the instances clearly indicate that the parties had seen appellee's advertising in the newspapers with the word ''Stein's'' appearing prominently at the top.

The foregoing are the salient facts, admitted or proven on the record. On these facts the appellant asks for the equitable relief set forth at the outset herein. It alleges that the trade name ''Stein's'' has been exclusively used by it for thirty years in this locality in its advertisements and business relations with customers and the trade and the public; that its business and merchandise is known throughout this territory by the name of ''Stein's''; that the entire business reputation, identity and good will of its store has been merged into that distinctive word rather than its corporate name or the personnel of the company; and that the word ''Stein's'' has acquired, in addition to its ordinary meaning, a secondary meaning and sig-

nificance in this territory. It is charged that, by reason of appellee's adoption of the distinctive word "Stein's," to the exclusion of other descriptive matter on its signs referred to, and use of that distinctive word prominently in its advertising as above described, together with the proximity of appellant's store, the public are led to believe that there is some connection between the two stores, that the public has been and will continue to be confused and misled, and that appellee is making unwarranted profit by using appellant's trade name, all to appellant's damage for which it has not, and will not have, an adequate remedy at law.

The appellee contends that the word "Stein's," as here used, is but an abbreviation of the family name of the appellant's corporate name, and is the family name of the members of appellant's corporation, and therefore it is not a technical trade name or trade mark; that appellee is also a corporation whose members' names are all Stein; that the businesses of the parties are non-competing, and therefore the name "Stein's" is neither a technical nor secondary trade mark or trade name; that trade names and trade marks of secondary meaning are not applicable to non-competing businesses; that since appellee was in business on Adams street before appellant was on that street, appellee would be entitled to protection rather than appellant (but appellee does not ask for affirmative relief), and that there is no evidence of unfair competition.

On the established facts, is appellant entitled to relief in a court of equity? The trial court found it was not, and appellant seeks relief in this court on trial *de novo*.

As before stated, there are literally hundreds of reported cases involving the questions here presented, and we have examined a great many of them. We see

no occasion or necessity to add to the legal lore on the subject or discuss all of these cases. We will state our conclusions and refer to some of the cases which we hold are determinative of the questions here presented.

Much of the argument of appellee, both orally and in its brief, is devoted to a discussion of the law relating to a family or surname. In our view, however, that is not the issue or controlling point in this case. Both parties hereto are corporations, having full corporate names. One corporation, the appellant, has a trade name and trade mark which it has used for thirty years and has spent a million dollars to make known to the public, and around that trade name, now also registered in Ohio as a trade mark, it has built up a valuable asset of good will. The other corporation has never had, used or claimed that particular trade name in its business until just before this suit was brought in 1936, when it erected signs and used newspaper advertising appropriating the trade name and trade mark of appellant, thereby having the effect of appropriating to itself some of the good will built up by appellant on that trade name. Whether it is a family name is beside the point, for the appellee is now a corporation, not an individual, and is doing business as a corporation, and as a corporation and prior to that while it was a partnership, and prior to that as an individual's business, it never used the trade name "Stein's," as it is now seeking to do and of which appellant complains.

Under the overwhelming weight of authority the appellant is entitled to protection against the use, by another, of its established trade name and trade mark in such manner as to mislead the trade and the public to believe that when they are dealing with one they are dealing with the other, or in such manner that such use results, or may result, in appropriation of the good will, a property right of the other—in the first case a

fraud upon the public; in the second, an infringement of a property right. Nims on Unfair Competition and Trade-Marks (3 Ed.), 1 *et seq.* (historical), 5, 6, 16, 25, 27, 35, 40, 41, 125, 126, and also 46 *et seq.* (Good will); Hopkins on Trade Marks, Tradenames and Unfair Competition (4 Ed.), 169, 171, 173, 174; 47 A. L. R., 1189, and cases discussed; *Cleveland Opera Co.* v. *Cleveland Civic Opera Assn., Inc.,* 22 Ohio App., 400, 154 N. E., 352; *The Drake Medicine Co. and Drake* v. *Glessner,* 68 Ohio St., 337, 67 N. E., 722; *Vogue Co.* v. *Thompson-Hudson Co.,* 300 F., 509; *Devlin* v. *Devlin,* 69 N. Y., 212, 25 Am. Rep., 173; *Armour & Co.* v. *Master Tire & Rubber Co.,* 34 F. (2d), 201; *Thaddeus Davids Co.* v. *Davids Mfg. Co.,* 233 U. S., 461, 58 L. Ed., 1046, 34 S. Ct., 648; *Kaufman* v. *Kaufman,* 123 N. Y. Supp., 699; *Vick Chemical Co.* v. *Vick Medicine Co.,* 8 F. (2d), 49; *Wall* v. *Rolls-Royce of America, Inc.,* 4 F. (2d), 333; *Waterman Co.* v. *Modern Pen Co.,* 235 U. S., 88, 59 L. Ed., 142, 35 S. Ct., 91.

"Injury to good-will, actual or threatened, lies at the basis of the unfair competition action. The presence or absence of that injury, not mere loss of sales, is a test of its applicability to any set of facts." Nims on Unfair Competition & Trade-Marks (3 Ed.), 51, 52. See also *S. F. Myers Co.* v. *Tuttle,* 183 F., 235; *S. F. Myers Co.* v. *Tuttle,* 188 F., 532; *Warner Bros. Co.* v. *Wiener,* 218 F., 635.

So far as the record discloses, the appellee enjoys a reputation for fair dealing and honesty, and handles good merchandise, but, granting this, the appellant is not required to entrust its good will, or any part of it, to appellee's keeping. *Vogue Co.* v. *Thompson-Hudson Co., supra; Aunt Jemima Mills Co.* v. *Rigney & Co.,* 247 F., 407; *Yale Electric Corp.* v. *Robertson,* 26 F. (2d), 972.

Again, granting appellee's honesty in its business, it is a significant fact that within seven months after

appellant moved into its fine, new, five-story building four doors away, and began to display the word "Stein's" prominently on its store front, windows and awnings, the appellee formed a corporation, "The S. B. Stein & Son, Inc."; that within the year before this suit was brought the appellee began to use signs and advertising with the single word "Stein's," which he had never done before in his thirty years of business at that location; that he put a sign across his store front bearing that one word in much the same style of lettering and general appearance in the daytime as the sign of appellant, and a sign with the same word over his large street clock. What was his purpose in doing this? Was it accidental or intentional?

Appellant's corporate name is "The Hugo Stein Cloak Co.," using the name of one person, and its trade name for thirty years has been the single word "Stein's," singular possessive; appellee's corporate name is "The S. B. Stein & Son, Inc.," using the name of two persons, father and son; therefore the trade name lately appropriated by appellee, "Stein's," exactly the same as appellant's trade name, is not accurate. Intent to simulate the trade name of appellant, in our opinion, is strongly suggested by the foregoing facts.

However, according to the almost unanimous view of the courts, it would make no difference whether the use of the name is accidental, incidental or intentional, if it results in misleading the public and causes confusion, resulting in the belief that it is dealing with one when it is dealing with another. Nims on Unfair Competition & Trade-Marks (3 Ed.), 126; *Standard Oil Co.* v. *Michie*, 34 F. (2d), 802, 803.

Practically all of the cases cited by appellee throughout its brief, cases upon which it relies to defeat appellant's prayer for relief, say that if the defendant uses any device, artifice, simulation or practice which

tends to mislead the public, or which is in any degree an attempt to appropriate or "cash in" or "chisel" on the good will of the business of another bearing the same name, established and built up in the course of years, equity will protect the first user of a trade name, though a family name, and will protect the good will so established.

The record in this case leads to but one conclusion; that the recent acts of the appellee in the respects complained of, by the use of its signs and newspaper advertising in exactly the same form as appellant's long-used form, are an invasion and infringement of the rights of appellant. Any doubt in unfair competition cases, or trade name and trade mark cases, as to whether appropriation of a trade name will produce confusion or damage, must be resolved against the newcomer who uses it. *Standard Oil Co.* v. *Michie, supra; Yale Electric Corp.* v. *Robertson,* 21 F. (2d), 467.

We know of no reason why the employees of "Stein's" should be taking their employer's time to explain to the confused public who "S. B. Stein & Son, Inc." are and where their business is located and what merchandise they handle. In that respect at least the appellant is damaged.

No evidence was offered on the subject of an accounting, nor has the claim for accounting been pressed, and accordingly no finding is made thereon.

*Decree for appellant.*

LLOYD and CARPENTER, JJ., concur.