HOWARDS CLOTHES, INC., v.
HOWARD CLOTHES CORPORATION (NOW HOWARD
CLOTHES OF NEW YORK, INC.).[1]

April 4, 1952.

No. 35,656.

[1]Reported in 52 N. W. (2d) 753.

*Silver, Green & Goff,* for appellant.

*Morley, Cant, Taylor, Haverstock & Beardsley* and *Franklin D. Gray,* for respondent.

MATSON, JUSTICE.

Appeal from an order denying plaintiff's motion for a new trial in an action for damages and for an injunction for unfair competition and infringement of tradename.

Plaintiff seeks to enjoin defendant from using the word "Howard" or the words "Howard Clothes" or any similar name in connection with the sale of men's and boys' clothing and furnishings in the city of Minneapolis or at any place within a radius of 100 miles from Minneapolis and St. Paul, and also prays for damages. Plaintiff relies on M. S. A. 301.05, subd. 2 (forbidding the use of a corporate name deceptively similar to that of another corporation doing business within the state), and subd. 8 (authorizing injunctive relief), and on the general law relating to unfair competition and infringement of tradename to substantiate its claim.

PLAINTIFF'S HISTORY.

Plaintiff was incorporated June 7, 1946, as a Minnesota corporation under the name of "Howards Clothes, Inc." Its business and the business of its predecessors has been that of carrying on a retail men's and boys' clothing and furnishings business, principally in St. Paul, Minnesota.

From August 25, 1945, to the date of incorporation, plaintiff's business was carried on by a partnership composed of J. M. Silberstein and his son, Howard Silberstein, under the firm name of "Howards Clothes." Prior to that time the name has a varied history. J. M. Silberstein first adopted the name in 1928 in connection with a store which he operated in LaCrosse, Wisconsin. The

name Howard was selected because it was his son's name, and this name continued to be used in connection with various stores owned by J. M. Silberstein in Wisconsin, Iowa, and North Dakota. The first St. Paul store was opened in 1936 under the name "Howards," and a certificate of tradename was filed. The present store was opened in 1941 under the name "Howards Clothes" and was operated by J. M. Silberstein as an individual until the formation of the partnership which, as already stated, was supplanted in 1946 by a corporation. In 1945 the son changed his surname to that of Howard. The latter has been president of plaintiff corporation since its organization and owns 50 percent of its stock.

### DEFENDANT'S HISTORY.

Defendant was first incorporated in Minnesota on November 9, 1948, under the name "Howard Clothes Corporation." Subsequently, at the request of the attorney general, the corporate name was changed to "Howard Clothes of New York, Inc." Defendant's business is that of carrying on a retail men's and boys' clothing and furnishings store in Minneapolis, Minnesota.

Defendant's incorporators and their predecessors have long operated men's clothing and furnishings stores in the East under the name of Howard. Their first Howard store was opened in New York in 1924. This store likewise was named for the owner's son. A corporation was subsequently organized in New York in 1925 under the name "Howard Clothes Inc.," though the name was later changed to "Howard Stores Corporation." This corporation operates a chain of stores. Each store is separately incorporated, and each store uses the words "Howard Clothes" in its corporate name. Defendant is one such store. Neither defendant nor its predecessor did any business in Minnesota prior to the incorporation of defendant in 1948, though a trademark consisting of the words "Howard Clothes" was filed by defendant's predecessor in 1942.

The trial court concluded that defendant's name was not violative of the Minnesota statutes or the general law relating to unfair competition and infringement of tradename, and that plaintiff has sus-

tained no damages by defendant's operations in Minneapolis. The court did, however, require defendant, except for labels in its haberdashery, suit coats, and other coats, to feature prominently the words "of New York" in its name and in its store-front signs, its radio, television, and other advertising, and in letterheads, bills, receipts, price tags, and other printed matter used by defendant in conducting its business.

In unfair competition cases for the infringement of a tradename, the usual rule prevails that the trial court's findings must be sustained unless, taking the view of the entire evidence most favorable to the prevailing party, they are manifestly and palpably contrary to the evidence as a whole.

We are first confronted with two broad but interrelated issues:

(1) Is defendant's corporate name deceptively similar to plaintiff's corporate name in violation of M. S. A. 301.05, subd. 2?

(2) Does defendant's name as used in its business constitute unfair competition with plaintiff and an infringement of plaintiff's tradename?

■ As to the first issue, § 301.05, subd. 2, provides:

"The corporate name shall not be the same as, nor deceptively similar to, the name of any other domestic corporation or of any foreign corporation authorized to do business in this state * * *."

In the light of this statutory provision, the first issue relates to the corporate name in its entirety. The second issue, however, encompasses not only the corporate name as a unit but also variations and uses thereof in violation of the much broader concept of unfair competition as that term is used at law and in equity generally. By its own terms, the statute provides that it shall not be applied so as to abrogate or limit the law as to unfair competition. § 301.05, subd. 5. As applied in unfair competition cases, a corporate name is deceptively similar to the name of another corporation only if the similarity tends to deceive the ordinary purchaser as to the true identity of the goods whereby he is led to believe that he is getting

plaintiff's product when he is in fact getting that of defendant.[2] By sound analogy, it follows that if the similarity does not tend to deceive an ordinary purchaser, the corporate name, reasonably for all purposes, meets the statutory requirement (§ 301.05, subd. 2) that it shall not be the same as or deceptively similar to that of another corporation authorized to do business in this state.

■ In order to obtain relief in an action for unfair competition and infringement of tradename, plaintiff has the burden of proof[3] in establishing three requisites, namely:

(a) That plaintiff's name has a special significance or secondary meaning in the trade;[4]

(b) That plaintiff has an exclusive right to, or a protectible interest in, the tradename with reference to his goods, services, or business[5] and with reference to the territorial[6] or special group

[2]See, Brown Sheet Iron & Steel Co. v. Brown Steel Tank Co. 198 Minn. 276, 269 N. W. 633, 107 A. L. R. 1276; Thompson Lbr. Co. v. Thompson Yards, Inc. 144 Minn. 298, 175 N. W. 550; 12 Minn. L. Rev. 764; 6 Dunnell, Dig. & Supp. § 9670.

[3]On burden of proof generally, see Kellogg Toasted Corn Flakes Co. v. Quaker Oats Co. (6 Cir.) 235 F. 657; McGraw-Hill Pub. Co. Inc. v. American Aviation Associates, Inc. 73 App. D. C. 131, 117 F. (2d) 293; Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 36 S. Ct. 357, 60 L. ed. 713; Upjohn Co. v. Wm. S. Merrell Chemical Co. (6 Cir.) 269 F. 209, certiorari denied, 257 U. S. 638, 42 S. Ct. 50, 66 L. ed. 410.

[4]Restatement, Torts, § 716, *comment b;* 26 N. C. L. Rev. 424.

[5]See, Kotabs, Inc. v. Kotex Co. (3 Cir.) 50 F. (2d) 810; Yale Elec. Corp. v. Robertson (2 Cir.) 26 F. (2d) 972; Emerson Elec. Mfg. Co. v. Emerson R. & P. Corp. (2 Cir.) 105 F. (2d) 908; Aunt Jemima Mills Co. v. Rigney & Co. (2 Cir.) 247 F. 407; 24 Ind. L. J. 575; 39 Trade-Mark Reporter 520; Restatement, Torts, § 717(b), *comments d* and *e,* and §§ 730, 731.

[6]Despite what this court held in Direct Service Oil Co. v. Honzay, 211 Minn. 361, 2 N. W. (2d) 434, 148 A. L. R. 1, the territorial market, by the modern trend and weight of authority, is not necessarily confined to the area of *actual competition.* See, particularly, 26 Minn. L. Rev. 568; 5 U. of Detroit L. J. 206; 2 Nims, Unfair Competition and Trade-Marks (4 ed.) § 374; Restatement, Torts, § 732; cf. Maison Prunier v. Prunier's Restau-

market[7] in which his tradename is used; and

(c) That defendant has unfairly used plaintiff's tradename, or a confusing simulation thereof (although not necessarily with a fraudulent intent[8]), whereby the ordinary purchaser, to plaintiff's or the public's detriment,[9] has been, or is reasonably likely to be, deceived as to the true identity of the goods, services, or business, and is misled into believing that he is getting plaintiff's product when he is in fact getting that of defendant.[10]

■ Has plaintiff's tradename acquired a secondary meaning? A tradename has acquired a secondary meaning when it has been actually *used* in association with plaintiff's goods to such an extent that, with reference to plaintiff's market, it has become the symbol by which plaintiff's goods are identified as *his* by the ordinary

rant & Cafe, Inc. 159 Misc. 551, 288 N. Y. S. 529; Buckspan v. Hudson's Bay Co. (5 Cir.) 22 F. (2d) 721; The Governor, etc., Trading Into Hudson's Bay v. Hudson Bay Fur Co. (D. C.) 33 F. (2d) 801; White Tower System, Inc. v. White Castle System, etc. (6 Cir.) 90 F. (2d) 67; Terminal Barber Shops, Inc. v. Zoberg (2 Cir.) 28 F. (2d) 807; American Radio Stores, Inc. v. American R. & T. Stores Corp. 17 Del. Ch. 127, 150 A. 180; 51 West 51st Corp. v. Roland, 139 N. J. Eq. 156, 50 A. (2d) 369; Rainbow Shops, Inc. v. Rainbow Specialty Shops, Inc. 176 Misc. 339, 27 N. Y. S. (2d) 390; 26 Chicago-Kent L. Rev. 185; 20 Temple L. Q. 599; 52 Am. Jur., Trademarks, Tradenames, etc., §§ 104 to 112.

[7] Restatement, Torts, § 717(b), *comments d* and *e.*

[8] While actual fraudulent intent is not essential, it may be material. Restatement, Torts, §§ 711, 712, and 717, *comment a,* 729(b), *comment f.* See, Thompson Lbr. Co. v. Thompson Yards, Inc. 144 Minn. 298, 175 N. W. 550; Northwestern Knitting Co. v. Garon, 112 Minn. 321, 128 N. W. 288.

[9] See, Stork Restaurant, Inc. v. Marcus (D. C.) 36 F. Supp. 90; 39 Mich. L. Rev. 1047; 2 Nims, Unfair Competition and Trade-Marks (4 ed.) §§ 419 to 432. Actual damage need not be shown in order to obtain injunctive relief. 52 Am. Jur., Trademarks, Tradenames, etc., § 142; Restatement, Torts, §§ 745 to 748.

[10] Houston v. Berde, 211 Minn. 528, 2 N. W. (2d) 9; Brown Sheet Iron & Steel Co. v. Brown Steel Tank Co. 198 Minn. 276, 269 N. W. 633, 107 A. L. R. 1276; Thompson Lbr. Co. v. Thompson Yards, Inc. 144 Minn. 298, 175 N. W. 550; Northwestern Knitting Co. v. Garon, 112 Minn. 321, 128 N. W. 288; Restatement, Torts, §§ 717, 728, 729, 731.

purchaser.[11] A secondary meaning exists when the tradename indicates to the purchasing public the origin or source of the goods. Upon the evidence, there is little question that plaintiff's name has acquired a secondary significance in the city of St. Paul. Whether plaintiff's market extends beyond the St. Paul area, and to what extent, we need not now determine.

Is defendant's name "Howard Clothes of New York, Inc." so confusingly similar to that of plaintiff's name "Howards Clothes, Inc." that the public, as represented by the ordinary purchaser in plaintiff's market, is likely to be misled into believing that defendant's products are those of the plaintiff?

■ In determining the foregoing issue, a number of factors may be considered. Restatement, Torts, § 729. Although unfair competition and infringement of tradename may occur whether defendant acted innocently or for the purpose of deceiving prospective purchasers,[12] the element of intent is material because if defendant knowingly adopted plaintiff's tradename with the intent of deriving benefit from plaintiff's reputation and advertising, that intent is highly persuasive evidence of a confusing similarity, and defendant's denial that his conduct was likely to achieve the result intended by him will carry little weight.[13] Defendant's history establishes that it acted in good faith and without any fraudulent intent. In 1924, defendant's original predecessor established the first Howard's store in New York City, and it was by him named

[11]See, Brown Sheet Iron & Steel Co. v. Brown Steel Tank Co. 198 Minn. 276, 269 N. W. 633, 107 A. L. R. 1276; Houston v. Berde, 211 Minn. 528, 2 N. W. (2d) 9; 3 Callmann, Unfair Competition and Trade-Marks (2 ed.) § 66.1. The term "secondary meaning" does not mean that the tradename has acquired a subordinate or rare significance, but rather a subsequent and special significance which, as added to its previous meaning of designation, has become its usual and primary significance in the market. Restatement, Torts, § 716, *comment b.*

[12]Nesne v. Sundet, 93 Minn. 299, 101 N. W. 490; Northwestern Knitting Co. v. Garon, 112 Minn. 321, 128 N. W. 288; Thompson Lbr. Co. v. Thompson Yards, Inc. 144 Minn. 298, 175 N. W. 550.

[13]See, Safeway Stores, Inc. v. Sklar (D. C.) 75 F. Supp. 98; Restatement, Torts, § 729 (b), *comment f.*

for his son. It was not until four years later that plaintiff adopted the same name for the same reason. Since 1924, defendant's incorporators have established a number of retail stores for the sale of men's clothes and furnishings under the tradename of "Howard Clothes." In fact, they own the factories in which Howard Clothes are produced. Through systematic advertising and maintenance of standards of quality, the name "Howard Clothes" has become for them a valuable trade asset in their market. In the light of this history, it clearly appears that defendant's use of the Howard name in Minneapolis was simply to take advantage of the reputation and good will built up by its own incorporators and predecessors and involved no intent to ride on plaintiff's reputation. Upon the issue of good faith, it was proper for the court to admit evidence of the operative history of defendant and its predecessors. Both parties having adopted the name of Howard in good faith, the element of intent ceases to be a material factor upon the issue of whether a confusing similarity exists.

In disposing of the issue of confusing similarity, we shall assume, *without so deciding,* that plaintiff and defendant are doing business in the same market or trade area. In this assumed market, defendant's initial use of the name Howard was subsequent to that of the plaintiff. Through their respective founders or predecessors, the parties adopted the same personal name in good faith. A personal name, whether it be a surname[14] or a given name,[15] may become a tradename. The right of a corporation to use the personal name of one of its founders or incorporators is determined by the same principles applicable to an individual.[16] A subse-

[14]Brown Sheet Iron & Steel Co. v. Brown Steel Tank Co. 198 Minn. 276, 269 N. W. 633, 107 A. L. R. 1276; 1 Nims, Unfair Competition and Trade-Marks (4 ed.) § 72.

[15]Lucile Limited, New York & Paris, v. Schrier, 191 App. Div. 567, 181 N. Y. S. 694; Louis' Restaurant, Inc. v. Coffey, 132 Misc. 690, 230 N. Y. S. 82; Gottdiener v. Joe's Restaurant, Inc. 111 Fla. 741, 149 So. 646; 1 Nims, Unfair Competition and Trade-Marks (4 ed.) § 72, p. 226.

[16]See, Chas. S. Higgins Co. v. Higgins Soap Co. 144 N. Y. 462, 39 N. E. 490, 27 L. R. A. 42, 43 A. S. R. 769; Howe Scale Co. v. Wyckoff, Seamans

quent user of a personal name, though it be his own, may not, even in the exercise of good faith, use such name as a tradename in a market where another has acquired a prior right to use the same name with respect to related goods, unless such subsequent user accompanies the name with a distinguishing legend—or with some other appropriate explanation or device—which will eliminate any reasonable likelihood that the ordinary purchaser will mistake the subsequent user's goods for those of the prior user.[17]

■ In changing its corporate name from "Howard Clothes Corporation" to that of "Howard Clothes *of New York,* Inc.," has defendant accompanied the significant words *Howard Clothes* with a legend which is reasonably likely to caution and inform an ordinary purchaser that he is not dealing with the plaintiff? The distinguishing legend to be effective must be sufficiently striking in appearance or effect to distinguish defendant's name from that of plaintiff not only when the two names are in juxtaposition, but also when they are seen apart from each other as they are normally used in the trade. Restatement, Torts, § 728, *comment b.* The trial court found and determined that no confusion on the part of the ordinary purchaser will result and no trade will be diverted from plaintiff to defendant if the words "of New York" are featured *prominently* with the words "Howard Clothes" in defendant's store-front signs, its radio, television, and other advertising, and on its letterheads, bills, receipts, price tags, and other printed matter. This finding is reasonably sustained by the evidence. The words "of New York," *when given prominence,* at once arrest the eye and explain to the ordinary purchaser that he is not dealing with plaintiff or any other local Minnesota concern. Furthermore, as we pointed out in Brown Sheet Iron & Steel Co. v. Brown Steel Tank Co. *supra,* wherein the parties were located

& Benedict, 198 U. S. 118, 25 S. Ct. 609, 49 L. ed. 972; 12 Minn. L. Rev. 764; contra, The L. Martin Co. v. L. Martin & Wilckes Co. 75 N. J. Eq. 39, 71 A. 409.

[17]Sheffield-King Milling Co. v. Sheffield Mill & Elev. Co. 105 Minn. 315, 117 N. W. 447; see, Thompson Lbr. Co. v. Thompson Yards, Inc. 144 Minn. 298, 175 N. W. 550; Restatement, Torts, §§ 740, 744, *comment d.*

only a few blocks from each other but one was in St. Paul and the other in Minneapolis, the very fact that plaintiff and defendant were located in different cities would tend to keep their identities separate. Here, the distance between plaintiff's establishment and that of defendant is not just a few blocks but about ten miles. Although both parties are engaged in selling related goods, men's clothes and furnishings, there are some additional factors involving their manner of doing business which—although of little significance if standing alone—when added to the difference in corporate names, the location of the parties in separate cities, and the considerable distance between their respective business establishments, will contribute to keep the ordinary purchaser from being misled into believing that he is dealing with plaintiff or buying his goods when he patronizes defendant's store. In the first place, plaintiff, in addition to the clothes which it handles under its own brand name of Howard's Clothes, features other nationally advertised brands in its St. Paul store window and in its other advertising, whereas defendant does not handle other national brands. On occasion, plaintiff conducts fire-and-smoke sales, whereas defendant never does. Plaintiff handles hats and shoes, and defendant does not. Finally, with respect to suits bearing the name Howard, plaintiff carries a wide range of grades priced from $29.50 to $115, whereas defendant sells suits at only two prices, namely, $31.95 and $39.95.

In its requirement that defendant shall at all times feature the words "of New York" prominently, the trial court made one exception by permitting the use of the words "Howard Clothes" alone in its haberdashery, suit, and coat labels. This lone exception is justified on two grounds. First, defendant's parent organization manufactures all its clothes with the same sewed-in label and follows the practice of shifting its supply of suits from one retail outlet to another according to changes in the purchasing demands of its various retail locations. It would have been an unnecessary hardship to require defendant to change labels and thus make it difficult for it to make use of the national production

and distribution of its parent organization. Secondly, the labels sewed in a garment have little tradename significance, as was pointed out by the court in Brooks Bros. v. Brooks Clothing of California, Ltd. (D. C.) 60 F. Supp. 442, 456 (affirmed [9 Cir.] 158 F. [2d] 798), when it said:

"* * * Hence such similarity as may appear in the labels has little bearing on the case. We should not forget that we are dealing with men's clothes and that labels on them are sewed on the inside, and do not have the visual appeal which a label on a bottle, box, can, package or like containers has, and are only incidental to the purchase."

Conflicting interests and equities must always be weighed in determining the lines to be drawn in separating fair from unfair competition. See, Emerson Elec. Mfg. Co. v. Emerson R. & P. Corp. (2 Cir.) 105 F. (2d) 908. Although courts will protect the use of a name that is so identified with a product that it has acquired a secondary meaning, the protection need not be any greater than is reasonably necessary to accomplish the desired purpose. Brown Sheet Iron & Steel Co. v. Brown Steel Tank Co. *supra.*

The use by defendant of its tradename, *as expressly qualified and restricted by the trial court,* reasonably avoids a confusing similarity in tradenames, and in this respect the trial court's findings are sustained by the evidence. In the light of the trial court's restrictive decree for the protection of plaintiff, the names herein are not nearly so similar as those involved in Thompson Lbr. Co. v. Thompson Yards, Inc. 144 Minn. 298, 175 N. W. 550.

In the absence of a confusing similarity in the tradenames, it becomes unnecessary to consider whether the parties occupy the same market or trade area, as well as the related issues thereto pertaining.

The order of the trial court is affirmed.

Affirmed.