398 P.2d 942

**KING'S OF BOISE, INC., a corporation,
Plaintiff-Appellant,**

v.

**M. H. KING COMPANY, a corporation, and
M. H. King Company of Orchard, a corpo-
ration, Defendants-Respondents.**

No. 9385.

Supreme Court of Idaho.

Jan. 29, 1965.

Rehearing Denied Feb. 23, 1965.

Richards, Haga & Eberle and Davison, Davison & Copple, Boise, for appellant.

Parsons, Smith & Snow, Burley, for respondents.

TAYLOR, Justice.

Plaintiff (appellant) King's of Boise, Inc., is the successor in interest to Arbuckle, King & Whillock, Inc. In April, 1946, plaintiff's predecessor filed a certificate of assumed or fictitious name designating that it was doing business under the name of "King's". The name adopted was the surname of Stan King, who at that time became the active head of the business. Plaintiff and its predecessor were engaged in the retail sale of shoes, handbags and accessories. Over the years plaintiff has done extensive advertising of its business under that name, and the name has come to mean quality and integrity in the retail

shoe business in the Boise valley. At present 95% of plaintiff's business comes from the sale of high quality shoes and the remainder from the sale of ladies' handbags, hosiery, rubber footwear and allied accessories. It operates two stores, one in downtown Boise and another in the Vista shopping center, also in the city.

Defendant (respondent) M. H. King Company of Orchard is an almost wholly owned subsidiary of defendant (respondent) M. H. King Company. The parent corporation, incorporated in 1926, is successor in interest to a partnership founded in 1915 by M. H. King. H. E. King, president of both defendant corporations, is the son of the founder, M. H. King. The parent corporation has for many years operated a chain of variety stores in Idaho and neighboring states. For convenience the defendant corporations will hereafter be referred to as defendant.

In 1954 defendant commenced doing business on Orchard avenue in Ada county as a retail variety store under the name of M. H. King Company. From 1954 through May, 1962, its advertising appeared under the name of M. H. King Company. In May, 1962, defendant changed the location of its store to the Franklin shopping center, a suburb of Boise (since incorporated within the city limits), and changed the outside sign on the storefront from M. H. King Company to "King's", without any other wording or designation. Thereafter, its advertising carried the word "King's" in large letters and the words "Variety Department Store" in small letters.

The reason given by defendant for the change was that the company had adopted a policy conforming to the trend in variety store business of using the singular possessive name. Several of its Idaho stores were changed to the name "King's". Defendant's store handled some 10,000 distinguishable items common to the variety store business. Among these was a limited quantity of inexpensive handbags, shoes and related accessories. This latter merchandise accounted for less than 5% of defendant's sales volume and was of a lesser price and quality than similar merchandise sold by plaintiff.

The trial court found that defendant's adoption and use of the name "King's" was not done with an intent to benefit from plaintiff's good reputation or to pass off its goods as those of plaintiff, or to confuse the public for its own advantage; that the parties were not in actual or direct competition, because they "aim at entirely different classes of customers"; that the public has not been confused "except in very minor ways." The court further found:

"14. That plaintiff's evidence shows a small amount of mis-directed and mis-delivery of merchandise. That the defendant maintains a telephone listing in the Boise, Idaho, telephone directory

under the name of M. H. King Company. Some mis-directed telephone calls by the public occur when defendants advertise."

"16. That if there is any conflict or confusion in the public mind, it involves such items as hosiery, slippers and rain boots, but the name 'King's' is not particularly associated with these items in the Boise area.

"17. That the effect of the use of the name 'King's' by defendants in their advertising, insofar as it affects plaintiff, is to dilute the meaning of 'King's' in the Boise area to some extent. In the past 'King's' standing alone meant shoes; now it could mean variety store items and shoes. The effect of this is not really significant because whenever either party advertises, it is almost always with reference to some item of merchandise, and when the term 'King's' is related to a particular item of merchandise advertised, there is no confusion in the public mind and no real injury to plaintiff or the public.

"18. That no actual monetary damage to plaintiff was shown. That competitive injury was not proved and the confusion to the public as a result of the two 'King's' stores is quite minor."
The court concluded:

"1. That the plaintiff has acquired a secondary meaning to the name 'King's' in the field of retail shoe sales in Boise, Idaho.

"2. That in order to be entitled to injunctive relief against the use of its trade name by defendants the plaintiff must establish, in addition to the acquisition of a secondary meaning to its name, that the use of such name by the defendants will result in a basic unfairness to either the plaintiff or the public by a showing either: (1) that the circumstances are such that it appears that the business of plaintiff will suffer from the use of such name by the defendants, or (2) that by reason of the use of such name by the defendants the public has been imposed upon because such use has, or probably will, result in confusion of source on the part of the purchasing public. That plaintiff has failed to establish either of such factors and is not entitled to injunctive relief.

"3. That the existence of some incidental confusion is not sufficient grounds for the granting of injunctive relief, particularly when the name used by the defendant corporations is that of their founder, president, and present principal stockholder."

The court also concluded that while "actual or direct competition" was not indispensable to injunctive relief, it was a factor to be taken into consideration in determining whether such relief should be granted, and

that defendant's good faith and bona fide reason for the use of the name adopted were also factors to be considered.

A personal name or surname may acquire a secondary meaning and become a trade name. Madison v. LaSene, 44 Wash. 2d 546, 268 P.2d 1006, 44 A.L.R.2d 1145 (1954); MacSweeney Enterprises v. Tarantino, 106 Cal.App.2d 504, 235 P.2d 266 (1951); Winfield v. Charles, 77 Cal.App.2d 64, 175 P.2d 69 (1946); Howards Clothes v. Howard Clothes Corp., 236 Minn. 291, 52 N.W.2d 753 (1952); Stern Furniture Co. v. Stern (Ohio App.) 83 N.E.2d 804 (1948); Hugo Stein Cloak Co. v. S. B. Stein & Son, 58 Ohio App. 377, 16 N.E.2d 609 (1937); Brooks Bros. v. Brooks Clothing of Cal., 60 F.Supp. 442 (S.D.Cal.1945). When such a name has become established in a market area as a trade name with a secondary meaning, a subsequent user may not use that name or a deceptively similar name in the same area, even though it be his personal name, in a manner harmful to the first user, or which is likely to mislead or confuse the public in dealing with either. The principles applicable in such case are set forth in Howards Clothes v. Howard Clothes Corp., supra, as follows:

" * * * Through their respective founders or predecessors, the parties adopted the same personal name in good faith. A personal name, whether it be a surname or a given name, may become a tradename. The right of a corporation to use the personal name of one of its founders or incorporators is determined by the same principles applicable to an individual. A subsequent user of a personal name, though it be his own, may not, even in the exercise of good faith, use such name as a tradename in a market where another has acquired a prior right to use the same name with respect to related goods, unless such subsequent user accompanies the name with a distinguishing legend—or with some other appropriate explanation or device—which will eliminate any reasonable likelihood that the ordinary purchaser will mistake the subsequent user's goods for those of the prior user." 52 N.W.2d at 759.

In Brooks Bros. v. Brooks Clothing of California, 60 F.Supp. 442 (S.D.Cal.1945), the Federal District Court in an opinion, adopted by the Circuit Court of the Ninth Circuit (1947) 158 F.2d 798, stated the governing principle as follows:

"A person has an inherent right to use his name in his business. And this right is recognized in the law of New York and of California, and by federal courts in cases involving trademarks and unfair competition. However, when a person uses even his own name in a manner to create confusion

between his business and that of the longer established business of another bearing the same name, the courts will interfere, and, while not depriving the new-comer entirely of the use of his name in his business, will circumscribe such use by words or phrases indicating clearly that the new-comer's goods do not originate with the older user." 60 F.Supp. 449.

See also: Miller v. Barnes (Okl.) 380 P.2d 965 (1963); 87 C.J.S. Trade-Marks, Etc. § 95.

■■■ Where the first user seeks only injunctive relief, such user is not required to establish fraudulent intent, actual confusion or deception of the public, actual competition, or damage to his business or good will. These are all important elements to be considered in resolving the issue of unfair competition, but where damages are not sought the first user is entitled to injunctive relief where it is shown that there is a likelihood of confusion or deception or of harm to plaintiff's business or good will. Cazier v. Economy Cash Stores, 71 Idaho 178, 228 P.2d 436 (1951); American Home Benefit Ass'n v. United American Benefit Ass'n, 63 Idaho 754, 120 P.2d 1010 (1942); American Fence Co. of the Midwest, Inc. v. Gestes, dba All-American Fence Company, 190 Kan. 393, 375 P. 2d 775 (1962); Madison v. LaSene 44 Wash.2d 546, 268 P.2d 1006 (1954); Mac-Sweeney Enterprises v. Tarantino, 106 Cal.

App.2d 504, 235 P.2d 266 (1951); Winfield v. Charles, 77 Cal.App.2d 64, 175 P.2d 69 (1946); California Prune & Apricot Growers Ass'n v. H. R. Nicholson Co., 69 Cal. App.2d 207, 158 P.2d 764 (1945); Kansas Milling Co. v. Kansas Flour Mills Co., 89 Kan. 855, 133 P. 542 (1913); Howards Clothes v. Howard Clothes Corp., 236 Minn. 291, 52 N.W.2d 753 (1952); Lady Esther v. Lady Esther Corset Shoppe, 317 Ill.App. 451, 46 N.E.2d 165, 148 A.L.R. 6 (1943); Brooks Bros. v. Brooks Clothing of Cal., 60 F.Supp. 442 (S.D.Cal.1945); Audio Fidelity Inc. v. High Fidelity Recordings, Inc. (9th Cir. 1960) 283 F.2d 551; Keller Products v. Rubber Linings Corp. (7th Cir. 1954) 213 F.2d 382, 47 A.L.R.2d 1108; American Products Co. (a Del. corp.) v. American Products Co. (a Mich. corp.) 42 F.2d 488 (E.D.Mich.1930); 87 C.J.S. Trade-Marks, Etc. §§ 89 through 93; Restatement of the Law, Torts, § 728.

In Cazier v. Economy Cash Stores, supra, this court quoted from 63 C.J., pp. 396 and 397, as follows:

"'* * * in order to make out a case of unfair competition, it is not necessary to show that any person has been actually deceived by defendants' conduct and led to purchase his goods in the belief that they are the goods of plaintiff or to deal with defendant thinking he was dealing with plaintiff; it is sufficient to show that such deception will be the natural and probable

result of defendant's acts.'" 71 Idaho at 189, 228 P.2d at 442.

The same rule was announced by this court in American Home Benefit Ass'n v. United American Benefit Ass'n, supra. In the Cazier case we also quoted from Lanahan v. John Kissel & Son, 135 F. 899, at page 903 (C.C.E.D.N.Y.1905) as follows:

"'The object of injunctive relief is to prevent injury, threatened and probable to result, unless interrupted. Why should a person be required to stand by and see his property impaired, before he may stay the hand of the person seeking to offend? Actual injury may be the best evidence of its own existence, but a person should not be compelled to abide the results of trespass for the purpose of obtaining evidence of its injurious effects. Wrongs which are the probable result of given means should be prevented, not awaited. The infringement of the trade-mark implies injury.'" 71 Idaho at 187, 228 P.2d at 441.

In that case this court then further observed:

"The respondent acted promptly in an effort to protect his trade name; very shortly after the appellant commenced business the respondent protested to appellant's use of its corporate name; this was ignored, and within less than two months after the appellant commenced business in Bur-ley, Idaho, the respondent brought the present action. The time elapsed between the filing of the complaint and trial of the cause afforded a limited period for confusion and deception to arise. However, it was not necessary for respondent to await for the abundance of evidence of confusion and deception or until his business had suffered materially before seeking equitable relief. Evidence of actual confusion and deception on the part of customers is not readily available, often difficult to secure and is not always necessary where the similarity of names in itself suggests confusion. Gehl v. Hebe Co., 7 Cir., 276 F. 271." 71 Idaho at 189–190, 228 P.2d at 443.

Here defendant commenced using the name "King's", in the manner complained of, in May, 1962, and plaintiff commenced this action September 24, 1962. The confusion shown may have been minor, as the court found, but plaintiff was not required to await a cumulation of evidence of confusion, and the accrual of actual damage to its business, before seeking relief. Pacific Northwest Bell Telephone Co. v. Rivers et al., 88 Idaho 240, 398 P.2d 63 (1964).

Defendant relies to a considerable extent upon the fact that the parties were not in direct competition, in that the merchandise handled by each was substantially different

from the other, and that as to merchandise which was carried by both, the quality differed and the volume was insignificant. In holding that direct competition is not essential to injunctive relief, courts have said that diversion of trade and loss of sales is not the only injury of which complaint may be made of unfair competition. Other elements to be considered are loss or injury to the complaining party's reputation or good will, or interference with the normal expansion of his business, and the dilution of his trade name.

In Lady Esther v. Lady Esther Corset Shoppe, 317 Ill.App. 451, 46 N.E.2d 165, 148 A.L.R. 6 (1943), speaking of cases in which direct competition appeared, the court said:

" * * * The holding in those cases, that where there was direct competition between plaintiff and defendant there must be a 'palming off' to warrant relief, is far from saying that courts will not grant injunctive relief where the defendant's conduct is likely to cause confusion of the traders so that the public believes or is likely to believe that the goods of defendant are the goods of the plaintiff, or that the plaintiff is in some way connected with or is a sponsor of the defendant. In such situation relief will be granted although there is no competition." 46 N.E.2d at 167, 148 A.L.R. at 9.

In the extensive annotation following that case, 148 A.L.R. 12, the annotator sets out grounds for relief in the absence of direct competition, with supporting authorities, pp. 66 to 78. A part of his summary (p. 68) follows:

"Another theory of relief finds the complaining party's injury in the fact that by the acts of the junior appropriator there has been created a false impression of a trade connection between the parties, possibly subjecting the first appropriator to liability or to the embarrassment of litigation.

"While all the other theories above mentioned presuppose that the ultimate wrong is the confusion of source or origin of goods or services, there is one theory under which the 'whittling away' or 'dilution' of the selling appeal of a trademark or tradename is regarded as the essence of the wrong; and under which consequently, at least theoretically, relief may be available, even though there is no confusion, and no likelihood of confusion, as to source on the part of the customers."

In the following cases injunction was granted, though the parties did not sell the same merchandise. MacSweeney Enterprises v. Tarantino, 106 Cal.App.2d 504, 235 P.2d 266 (1951); California Prune & Apricot Growers v. H. R. Nicholson Co., 69

Cal.App.2d 207, 158 P.2d 764 (1945); Lady Esther v. Lady Esther Corset Shoppe, 317 Ill.App. 451, 46 N.E.2d 165, 148 A.L.R. 6 (1943); Hugo Stein Cloak Co. v. S. B. Stein & Son, 58 Ohio App. 377, 16 N.E.2d 609 (1937); Brooks Bros. v. Brooks Clothing of California, 60 F.Supp. 442 (S.D.Cal. 1945); Jewel Tea Co. v. Kraus (7th Cir. 1951) 187 F.2d 278; American Products Co. (a Del. corp.) v. American Products Co. (a Mich. corp.) 42 F.2d 488 (E.D. Mich.1930).

■■ Our statute governing the choice of a corporate name, forbids the assumption of a name the same as, or deceptively similar to, the name of any other domestic or foreign corporation authorized to do business in this state. I.C. § 30–107. That section further provides:

> "7. The assumption of a name in violation of this section shall not affect or vitiate the corporate existence but the courts of this state, having equity jurisdiction, may, upon the application of the state, or of any person, unincorporated association, or corporation interested or affected, enjoin such corporation from doing business under a name assumed in violation of this section, although its articles of incorporation may have been approved and a certificate of incorporation issued."

The foregoing section of the statute is concerned with a corporate name only and not with the assumption by a corporation of a name other than its corporate name. However, it clearly sets forth a fundamental rule of unfair competition. The name "King's" having been established by plaintiff as its trade name in the Boise area, the assumption and featuring of the same name by the defendant constituted a violation of that rule. The use of the name "King's" alone or featured in large letters in connection with the "Variety Department Store" in small letters, constituted the use of a name deceptively similar to that of plaintiff.

In Cazier v. Economy Cash Stores, supra, Justice Thomas cites Foss v. Culbertson, 17 Wash.2d 610, 136 P.2d 711 (1943), for the proposition,

> "that a person, whether it be individual or corporate, may not use a name which is the distinctive feature of a trade name which is already in use by another, if such use would tend to confuse in the public mind, the business of such person with that of another." 71 Idaho at 189, 228 P.2d at 443.

■ In the Cazier case we also recognized that in granting injunctive relief in such cases the court will not go further than is necessary to prevent unfair competition. In this case we recognize the right of defendant to use the surname of its president and founder, provided it is not used so as to constitute unfair competition, or to cause

confusion in the public mind with the name established by plaintiff. We conclude that defendant should not be enjoined from any and all use of the name "King's", but that it may be used by defendant only in connection with other appropriate words distinguishing defendant's name and business from that of plaintiff. The use of defendant's corporate name, or "King's Variety Store" or "King's Variety Department Store" should not be enjoined, provided the word "King's" is not featured or made to stand out as the symbol or trademark of defendant's business. The words accompanying the use of "King's" in its store signs and advertising should be equal in prominence with the word "King's" in such manner as to distinguish defendant's trade name and business from that of the plaintiff.

The finding of the trial court that plaintiff had not established actual damages is supported by the evidence, and its judgment denying damages to plaintiff is affirmed.

The judgment denying plaintiff's prayer for injunctive relief is reversed and the cause is remanded with directions to the trial court to enter judgment enjoining defendants from using the name "King's" in the manner heretofore used, and to the extent herein set forth. Such restriction to be limited to the Boise trade area.

Costs to appellant.

McQUADE, C. J., and McFADDEN, SMITH and KNUDSON, JJ., concur.