**NORTH STAR STATE BANK OF ROSEVILLE, Respondent,**

v.

**NORTH STAR BANK MINNESOTA, Appellant.**

Nos. C7–84–1509, C5–84–1900.

Court of Appeals of Minnesota.

Feb. 5, 1985.

David R. Fairbairn, Minneapolis, for respondent.

Steven C. Schroer, Minneapolis, for appellant.

Heard, considered and decided by POPOVICH, C.J., and HUSPENI and FORSBERG, JJ.

## OPINION

POPOVICH, Chief Judge.

North Star Bank Minnesota appeals from an order granting a temporary injunction and from an order modifying and clarifying it.

North Star State Bank of Roseville sought a temporary injunction claiming trade name and service mark infringement, unfair competition, and violation of Minnesota's deceptive trade practices act. In its order of August 2, 1984, as amended on August 3, 1984, the trial court enjoined North Star Bank Minnesota from serving an area previously designated by North Star State Bank of Roseville under the Community Reinvestment Act. The court further required North Star Bank Minnesota to use the name "North Star Bank Minnesota, formerly Crystal State Bank" in future advertisements, reprints of forms, telephone salutations, and name designations in its places of business.

North Star Bank Minnesota contends (1) the trial court's findings and conclusions do not support the order, (2) North Star State Bank of Roseville did not show it would

likely succeed on the merits, (3) the balance of equities tilts in its favor, and (4) public policy weighs against the injunctive relief granted. North Star State Bank of Roseville seeks review contending the lower court abused its discretion by granting an injunction which did not restore the parties to the status quo ante.

On October 22, 1984, the trial court ordered North Star Bank Minnesota not to use the words "North Star Bank" unless the words "formerly Crystal State Bank" are used with equal emphasis and prominence. North Star Bank Minnesota appeals from the order. North Star State Bank of Roseville seeks review of the order to the extent that it did not restore the parties to the status quo ante. On October 30, 1984, this court ordered (1) the October 22, 1984 order constituted a modification and clarification of the existing temporary injunction, (2) the order is stayed until further order, and (3) all claims would be considered with the appeal of the existing temporary injunction. We affirm.

## FACTS

Respondent North Star State Bank of Roseville was incorporated as the Falcon Heights State Bank in 1947. For thirteen years it has been providing banking services under the name of North Star State Bank of Roseville. Its main office is located in Roseville, Ramsey County, Minnesota, a northern suburb of the Twin Cities. In advertising and otherwise, it refers to itself as North Star State Bank or North Star Bank.

Since 1972, respondent spent over $185,-000 to promote its services. It has advertised in magazines and newspapers in the Twin Cities area and in magazines with a statewide distribution. It has also sponsored a KTCA weekly telecast and advertised on radio.

Appellant North Star Bank Minnesota has been providing banking services under the name of Crystal State Bank for the last thirty years. Its main office is located in Crystal, Hennepin County, Minnesota, a northwest suburb of the Twin Cities.

North Star Bank Minnesota is approximately ten miles from North Star State Bank of Roseville.

On March 12, 1984, appellant sought approval from the Minnesota Department of Commerce to change its name to "North Star Bank." The Commissioner found it was likely the public might confuse the bank with the North Star State Bank of Roseville. He returned the proposal and filing fee and suggested appellant submit an additional distinguishing name. The Commissioner approved the name North Star Bank Minnesota on April 13, 1984. Appellant began operating under its new name on April 23, 1984.

Appellant advised its customers it would be changing its name to "North Star Bank," advertised its name change, and referred to itself as North Star Bank. In these advertisements it placed its logo, a stylized street sign with the words "Easy Place," between the words north and star. In effect, the words "Easy Place" are above the words "North Star Bank." The name North Star Bank along with the logo appear on most of appellant's printed forms, stationery, etc. In the 1984 Minneapolis telephone Consumer Yellow Pages an ad asks "Which Northstar bank is easiest for you?" Crystal State Bank is listed as the first of three.

On May 3, 1984, respondent applied for and received a state certification for its service mark "North Star" for use in connection with banking services. It also received a certification for its mark "North Star" and a design which includes an outline of Minnesota with a superimposed star.

Since appellant changed its name, respondent's employees reported a large number of instances where people mistakenly thought they were talking with, corresponding with, or transferring funds to appellant. These include respondent's customers and members of the banking and financial community. As an example, a customer told respondent's chief executive officer it would now be more convenient to do his banking at the new North Star Bank

in Crystal rather than in the Roseville office.

Both appellant and respondent agree there are no geographic, economic or legal boundaries which restrict the areas from which they may draw customers. As of June 11, 1984, appellant had 218 accounts with addresses in the Ramsey County zip code area close to respondent's home office. Respondent has 428 accounts from Hennepin County in areas essentially north and west of Minneapolis center city and including Crystal.

In an order dated August 2, 1984, amended on August 3, 1984, the trial court enjoined appellant from serving an area previously designated by respondent under the Community Reinvestment Act. The court further required appellant to use the name "North Star Bank Minnesota, formerly Crystal State Bank" in future advertisements, reprints of forms, telephone salutations, and name designations in its places of business.

On September 25, 1984, North Star State Bank of Roseville applied for an order of contempt alleging that North Star Bank Minnesota was violating the court's orders of August 2 and 3, 1984. The court denied the motion for contempt and in its memorandum stated that North Star Bank Minnesota was not "technically" in contempt because it substantially complied with the letter of the court's order although not complying with the spirit of the order. It found that by using radically different sized types and reverse type, North Star Bank Minnesota had actually accentuated the words "North Star Bank" and made the distinguishing words unnoticeable. The court therefore ordered another hearing to consider changing the requirements of the temporary injunction.

On October 22, 1984, the trial court ordered North Star Bank Minnesota to not use the words "North Star Bank" unless "the words 'formerly Crystal State Bank' [were] used with equal emphasis and prominence." The court stayed its order until November 15, 1984 to permit preparation for compliance. The court of appeals stayed the October 22, 1984 order until further order directing North Star Bank Minnesota to comply with the spirit as well as the letter of the underlying temporary injunction.

## ISSUES

1. Do the trial court's findings and conclusions support a temporary injunction?

2. Did the trial court abuse its discretion by granting a temporary injunction?

3. Does public policy require that substantial deference be given to the Commerce Commissioner's approval of the name change?

4. Did the trial court abuse its discretion by not issuing a temporary injunction which restored the parties to the status quo ante?

5. Is the issue of attorney's fees before this court?

## ANALYSIS

1. "The trial court's ruling on a motion for a temporary injunction is largely an exercise of judicial discretion." *OT Industries, Inc. v. OT-Tehdas Oy Santasalo-Sohlberg Ab*, 346 N.W.2d 162, 165 (Minn. Ct.App.1984). This court will consider only whether the trial court clearly abused its discretion in granting, in part, the motion for a temporary injunction. *See id.* The facts alleged in the pleadings and affidavits are viewed in the light most favorable to the party who prevailed below. *Id.* (citing *Edin v. Jostens, Inc.*, 343 N.W.2d 691, 693 (Minn.Ct.App.1984)).

Five factors are considered in determining whether a temporary injunction should issue:

(1) the nature of the relationship between the parties before the dispute giving rise to the request for relief;

(2) the harm to be suffered by the moving party if the preliminary injunction is denied as compared to that inflicted on the nonmoving party if the injunction issues pending trial;

(3) the likelihood of success on the merits;

(4) the public interest; and

(5) administrative burdens in enforcing a temporary decree.

*Edin v. Jostens,* 343 N.W.2d at 693 (citing *Dahlberg Brothers, Inc. v. Ford Motor Company,* 272 Minn. 264, 137 N.W.2d 314 (1965)).

■ 2. Appellant initially contends the findings and conclusions of the trial court do not support the order entered. We do not agree. The trial court made specific findings and conclusions with regard to factors 1, 2, 3, and 5. It did not directly address factor 4. However, that factor must be addressed only if applicable. *See Dahlberg Brothers,* 272 Minn. at 275, 137 N.W.2d at 321–22. Appellant complains the trial court uses the single word "Northstar" rather than the two words "North Star." (These two words, however, are used in the court's order.) We do not believe this error is "clearly erroneous" requiring us to set aside the findings. *See* Minn.R.Civ.P. 52.01.

3. Appellant contends respondent did not show a likelihood of success on the merits. Respondent made different claims including common law trade name and trademark infringement and unfair competition.

In order to obtain relief in an action for unfair competition and infringement of tradename, plaintiff has the burden of proof in establishing three requisites, namely:

(a) That plaintiff's name has a special significance or secondary meaning in the trade;

(b) That plaintiff has an exclusive right to, or a protectible interest in, the tradename with reference to his goods, service, or business and with reference to the territorial or special group market in which his tradename is used; and

(c) That defendant has unfairly used plaintiff's tradename, or a confusing simulation thereof (although not necessarily with a fraudulent intent), whereby the ordinary purchaser, to plaintiff's or the public's detriment, has been, or is reasonably likely to be, deceived as to the true identity of the goods, services, or business, and is misled into believing that he is getting plaintiff's product when he is in fact getting that of defendant.

*Howards Clothes, Inc. v. Howard Clothes Corporation,* 236 Minn. 291, 296–97, 52 N.W.2d 753, 757–58 (1952).

In meeting the first requisite, respondent claims that "North Star" is an arbitrary mark which does not require a secondary meaning for legal protection. It also claims "North Star" has a secondary meaning.

■ "Whether a business acquires a protectable trademark depends on the nature of the mark it adopts." *Imported Auto Parts v. R.B. Shaller & Sons,* 258 N.W.2d 797 (Minn.1977). General principles of trademark law apply to trade names. *Id.* n. 2.

■ Courts have developed four categories of terms for trademark purposes. In ascending order of strength they are: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *Scott v. Mego Int'l Inc.,* 519 F.Supp. 1118, 1126 (D.Minn. 1981). A generic term is one which is commonly used as the name or description of a kind of goods and is afforded no trademark protection. *Id.* A descriptive term is one which conveys an immediate idea of the ingredients, qualities, or characteristics of goods and is only entitled to protection if it has acquired secondary meaning. *Imported Auto Parts,* 258 N.W.2d at 799. A suggestive term is one which falls between descriptive category and arbitrary and fanciful category. It is entitled to protection without proof of secondary meaning. *Scott,* 519 F.Supp. at 1127. An arbitrary or fanciful term is one which has no relation to the nature of the product and is entitled to trademark protection without proof of secondary meaning. *Id.* Arbitrary terms are afforded the strongest trademark protection. If the business selects a name which is "arbitrary with respect to its trade or merely sugges-

tive of it, the business' first use of the mark will establish common law rights, if another has not yet appropriated it." *Imported Auto Parts,* 258 N.W.2d at 799. We believe "North Star" is an arbitrary mark because: it has no relation to the services offered by a bank. Since it is arbitrary, proof of secondary meaning is unnecessary.

In order to establish the second requisite set forth in *Howard,* respondent must have a protectible interest in the trade name with reference to banking services and with reference to the territory or special group market in which the name "North Star" is used. A territorial market is not necessarily confined to an area of actual competition. *Howard,* 236 Minn. at 296 n. 6, 52 N.W.2d at 757 n. 5. In this matter, the parties agree there are no geographic or legal boundaries restricting areas from which they may draw customers. Respondent has advertised in the metropolitan market and to a limited extent in the statewide market. Based on these circumstances, the trial court did not clearly err when assuming respondent would likely prevail with regard to the second requisite under *Howard.*

The third requisite under *Howard* requires respondent to show appellant is unfairly using a confusingly similar name and that the ordinary customer is reasonably likely to be misled. The trial court found appellant's "new name is so close to [respondent's] as to cause confusion in the minds of [respondent's] customers and the public." Respondent documented a number of cases of actual confusion, including a customer who assumed the two banks were affiliated. The trial court did not clearly err in assuming respondent would likely prevail with regard to the third requisite under *Howard.*

The trial court concluded respondent would prevail at trial. The trial court did not abuse its discretion in making this determination. Since respondent made a sufficient showing with regard to common law trademark infringement and unfair competition, it is unnecessary to consider the merits of its other claims in order to uphold the granting of the temporary injunction.

4. Appellant claims equitable factors compel the conclusion the granting of a temporary injunction was a clear abuse of discretion. Appellant argues respondent has demonstrated no more than a hypothetical potential for injury while appellant has spent $62,000 advertising its new name and "Easy Place" logo and will necessarily spend more to satisfy the trial court's order. Appellant's argument is unpersuasive. The trial court's determination that respondent is likely to prevail at trial is contrary to the assertion that respondent's injury is hypothetical.

5. Appellant also contends public policy requires substantial deference be given to the Commerce Commissioner's approval of its name change. Appellant cites *In the Matter of the Application of Larson,* 350 N.W.2d 363 (Minn.1984), for the proposition that determinations by administrative agencies are to be given great weight by the courts. In *Larson,* the court discussed a determination made after a contested case proceeding under the Administrative Procedures Act. No contested case hearing was held before the name change was approved by the Commissioner of Commerce in this matter. Therefore, we are not persuaded by appellant's argument.

6. Respondent contends the trial court abused its discretion by not issuing a temporary injunction restoring the parties to the status quo ante.

A temporary injunction serves to maintain the status quo between the parties until their rights can be decided by a trial on the merits. *Pickerign v. Pasco Marketing Inc.,* 303 Minn. 442, 444, 228 N.W.2d 562, 564 (1975). However, a court "has the power to shape relief in a manner which protects the basic rights of the parties, even if in some cases it requires disturbing the status quo." *Cox v. Northwest Airlines, Inc.,* 319 F.Supp. 92, 95 (D.Minn. 1970).

In this matter, the trial court fashioned relief which protects the investments of both parties until an ultimate trial on the merits of the main action. The trial court did not abuse its discretion.

7. North Star Bank Minnesota asks this court to reverse the October 22 order to the extent it awards attorney's fees. There is no award of attorney's fees in the October 22 order. An attached but unincorporated memorandum refers to a previous court order in which attorney's fees were awarded. In the memorandum, the court justifies the previous award. The unincorporated memorandum "may be referred to only for the purpose of throwing light upon or explaining the decision." *Viking Automatic Sprinkler Company v. Viking Fire Protection Company*, 280 Minn. 250, 258, 159 N.W.2d 250, 256 (1968). Since there was no award of attorney's fees in the October 22 order, the issue of attorney's fees is not before this court.

## DECISION

The trial court did not abuse its discretion by issuing a temporary injunction and fashioning relief which protects the investment of both parties. The stay is lifted 30 days after the filing date of this opinion.

Affirmed.