## IRONITE CO. v. CEMENT WATERPROOFING & IRONITE CO.

### No. 5391.

District Court, E. D. Pennsylvania.
Sept. 17, 1937.

Joshua R. H. Potts, of Philadelphia, Pa., Eugene Vincent Clarke, of Chicago, Ill., and Basel H. Brune, of Philadelphia, Pa., for plaintiff.

A. D. Caesar and Charles W. Rivise, both of Philadelphia, Pa., for defendant.

**WELSH, District Judge.**

This suit is brought to restrain the alleged infringement of the registered trade-mark "Ironite," the name applied to a metallic compound used to render cement water resistent.

Plaintiff originally produced Ironite under patents covering compounds of finely divided metal, designed, when applied to cement, to render it waterproof by the oxidation of the metal particles. In addition to certain patents, the plaintiff procured a certificate of registration of the trade-mark which, by subsequent renewal, continues until 1951. The plaintiff has since about 1906 sold, distributed, and advertised the product throughout the United States and is at present so engaged; and in connection with such distribution, through agents and representatives, it has prescribed methods of application which have become known as the "Ironite Process."

Defendant, also engaged in the waterproofing business, has adopted the trade-name "Ironite" and the plaintiff's corporate name, and has used them in its corporate title, letterheads, and classified listings. The defendant seeks to justify such adoption and use on the ground that the plaintiff's patents were declared unenforceable in 1920 in certain anti-trust litigation wherein the plaintiff was restrained from seeking to assert a monopoly in the field of metal containing waterproofing material; the defendant contending that the plaintiff has by virtue of such decree no equitable right to redress in the present case. The defendant contends that the trade-mark is invalid because the term "Ironite" is generic and describes the product and process, and therefore is not registerable, and also that the validity of such registration expired with the original patents on the compound.

■ There is no evidence that the plaintiff has violated the terms of the prior injunction and equitable redress may not be denied because of any inequitable conduct on the part of the plaintiff. The questions raised are whether the trade-mark registration was rendered invalid by the expiration of the patent on the product known as "Ironite" and whether the term is generic.

■ The patents were issued in 1906 and 1911 and the trade-mark was registered in 1911. They relate to different rights which, although exercised by the plaintiff simultaneously, were distinctively different and separately valuable. The patent protected the plaintiff's rights in the compound, and the trade-mark registration covered the trade-name of its product; and although the patents became unenforceable as a result of litigation in 1920 and subsequently expired, it does not appear that these circumstances in any way affected or reduced the plaintiff's rights in the trade-name acquired by long-continued use and the trade-mark registration.

The plaintiff's overzealousness or other conduct may have defeated its purpose so far as the patent protection was concerned, but it did not destroy the proprietary interest in or the value to the plaintiff of the reputation and good will incident to the trade-mark and plaintiff's corporate title. Although the patents became ineffectual to prevent others from manufacturing metallic waterproofing compounds, we note that such materials were distributed under different names which might indicate that manufacturers recognized generally the proprietary interest of the plaintiff in the name "Ironite," if not in its patents.

It is established that the plaintiff has used the term "Ironite" since 1906 and has actively and extensively distributed its product throughout the United States. There is a substantial value in the good will incident to the word and the plaintiff's property therein, and even though the plaintiff no longer enjoys the rights of a patentee, it has over a long period created a valuable property right in the name of its product. It would be inequitable to permit others to appropriate the trade-name to the injury and damage of the plaintiff who has created the good will, reputation, and value incident to the term "Ironite." National Biscuit Co. v. Kellog Co., 33 U.S.Patent Quarterly 256. We find no evidence of any general adoption of the term by others such as would indicate an intent to deny the plaintiff's right to the mark, nor does it appear that the name has passed into the public domain by general use after the expiration of the patents. See Amiesite Asphalt Co. v. Interstate Amiesite Co. (C.C.A.) 72 F. (2d) 946.

The rights under the patents and the trade-mark registration being thus separate and distinct and the trade-mark having acquired a value from the registration and long use independent of the patent, and there being no passing of the term into the public domain, we conclude that the plaintiff's right to the exclusive use of the term "Ironite" was not terminated by the expiration or other disposition of the patents.

■■■ The defendant's use of the terms "Ironite" and "Ironite Process," and the appropriation of plaintiff's corporate name "Ironite Company" as part of defendant's corporate name, could and possibly was intended to give the impression to customers and prospective customers that the defendant was selling or applying the plaintiff's waterproofing product or process, or was affiliated by franchise or otherwise with the plaintiff. Such appropriation of the name with the view to benefiting from the reputation and good will acquired by the plaintiff over many years of operation and advertising, and the false impression given to the public, would justify the granting of an injunction. R. H. Macy & Co., Inc., v. Macy's Drug Store, Inc. (C.C.A.) 84 F.(2d) 387. The appropriation of the trade-mark in defendant's corporate name is also confusing to the public and leads to the general belief that defendant is in some way connected with the plaintiff, or with the distribution or application of its product, and should be enjoined. Mantle Lamp Co. v. Aladdin Mfg. Co. (C.C.A.) 78 F.(2d) 426; American Insulation Co. v. Eternit Roofing Corp. (D.C.) 14 F.(2d) 235.

■■■ The law is well settled that one may not appropriate as a trade-mark a name descriptive of an article of trade. Standard Paint Co. v. Trinidad Asphalt Mfg. Co., 220 U.S. 446, 31 S.Ct. 456, 55 L.Ed. 536. We also affirm that where, during the life of a monopoly created by a patent, a name has become the identifying and generic name of the thing patented, the name passes to the public with the cessation · of the monopoly. Singer Mfg. Co. v. June Mfg. Co., 163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118. We fail, however, to find that the term "Ironite" is generic in the sense that it is descriptive of any quantity or article known prior to its adoption by the plaintiff, or that it has since been generally or extensively applied to metal bearing waterproofing compounds. On the contrary, the testimony shows that the term has always been known and associated with the plaintiff and its products, and that there are numerous other metallic compounds designed for similar purposes to which the various manufacturers have given distinctive and more or less descriptive trade-names.

The finding that the term is not generic and descriptive is adequately supported by the evidence. We believe that its only significance is a direct reference to the plaintiff, Ironite Company, its product and process. Ironite Co. v. Guarantee Waterproofing Co. (D.C.) 52 F.(2d) 288. The appropriation of the term "Ironite" by the defendant to any product other

than that of the plaintiff is an infringement of the plaintiff's rights, and the use of the mark in defendant's corporate name, or as a descriptive word in connection with the means or method of applying waterproofing material other than that produced by the plaintiff, should be restrained.