AR–TIK SYSTEMS, Incorporated, an Indiana corporation, Plaintiff,

v.

H. A. McCULLOUGH, H. F. McCullough and H. A. McCullough and H. F. McCullough, d/b/a McCullough's Dairy Queen, Defendants.

Civ. A. No. P–1541.

United States District Court
S. D. Illinois, N. D.

Sept. 8, 1955.

**808**

Virgil Bozeman, of Bozeman, ·Moran & Klockau, Moline, Ill., for plaintiff.

Robert Graham, of Sollo, Graham & Califf, Moline, Ill., and Harry E. Witherell, Peoria, Ill., for defendants.

ADAIR, District Judge.

This is an action to recover damages for breach of contract.

The original contract involved was drafted by the defendant, H. A. McCullough and accepted by ·Harry M. Oltz on July 31, 1939. Both of these parties have subsequently transferred their interests in that contract, as well as their interests in subsequent modifications and additional contracts to other parties—Harry M. Oltz having transferred his interest in the contract to the plaintiff, Ar-Tik Systems, Incorporated, and H. A. McCullough his interest to a partnership composed of himself and the defendant, H. F. McCullough.

By the original contract, H. A. McCullough acquired the manufacturing rights under certain development including a patent Number 2,080,971 issued to Harry M. Oltz; being a patent on a machine designed to produce a product called by a variety of names, to-wit: Soft Ice Cream, Ice Milk, Semi-Frozen Dairy Products, etc.

· The rights· to make, use, and sell freezing and dispensing machines produced in operable form from certain development data of Harry M. Oltz were acquired by H. A. McCullough from Harry M. Oltz by the original contract. Included in said contract was reference to Patent No. 2,080,971, issued under date of May 18, 1937, on a machine designed for said purpose, to-wit: Freezing and dispensing soft ice cream, Ice milk, Semi-Frozen dairy products, etc. However, H. A. McCullough in his contract with Oltz made specific provision for the continuation of his manufacturing rights during the life of improvements beyond May 18, 1954 and further specific provision that the royalties would continue to be payable to H. M. Oltz on all machines manufactured under said agreement and used ·in· the business instituted and developed by H. A. McCullough.

It is apparent that the parties originally contemplated that H. A. McCullough would institute a business utilizing the machines manufactured by him and place said machines into operation either in his own stores or retail outlets, or retain title to them and let other retailers use them on some sort of a lease basis. The royalties provided for by McCullough, in the contract, are unique in that the payments at the rate of 4¢ per gallon on all mix processed through said freezing and dispensing machines integrated in said business, continued indefinitely to H. M. Oltz. Events thrust themselves upon McCullough and forced a direction to the business so instituted wholly uncontemplated by him at the outset. Yet the original payment plan, altered by this force of events, unique as it was, became the pattern for the entire Soft Ice Cream Industry and is now commonplace.

·He conceived the name "Dairy Queen" to designate the business he instituted and conducted. The events which changed McCullough's program and set this new industry pattern were the following: McCullough designed a new type of retail merchandising outlet consisting of an attractive small store with windows on three sides and with his

stainless steel ice cream machines visible from the street. Over a period of several years, McCullough himself put more than 20 stores in operation installing and utilizing said machines under this trade name Dairy Queen. Realizing its importance, he has registered the name in almost every state in the Union. The impact of this new product and this new way of merchandising together with the unique trade name, was tremendous. Shortly after the first store was opened the popular demand to be permitted to conduct this sort of business by operating said machines under trade name Dairy Queen was overwhelming. McCullough finally decided to commence the granting of franchises throughout the Western Territory encompassed in his original contract in order to fulfill his duty thereunder. He, of course, in granting any such franchises, was confronted with the background of the said contract with Oltz.

It is apparent that McCullough guarded and furthered the rights of Oltz assiduously and made provision that the 4¢ royalty should be paid to Oltz on all machines made under said agreement and used in the Dairy Queen business, regardless of the existence or nonexistence of patents.

The Court has not deemed it necessary to examine all franchise agreements issued by McCullough or his successors, to the various franchise holders to determine whether or not the rights of Oltz were guarded, for several reasons: In the first place, that question is of little importance in this controversy for the reason that McCullough is bound by his own contract regardless of his agreement with others. In the second place, the franchise holders were all aware that the rights of Oltz were involved and they could therefore acquire no greater rights with respect to the use of the machines in the Dairy Queen business exclusively than had the person from whom they acquired their rights. They would be bound to ascertain the extent of their assignor's rights and would be foreclosed from either denying the validity of any patent or the terms or extent of the original contract involving the machine development. The franchise holders would therefore be bound by those limitations, whether they had actual knowledge or not. In the third place, it is apparent from the evidence that all franchise holders, subfranchise holders and store operators were, in addition to their previous actual or constructive knowledge of the rights of Oltz and his assignee, Ar-Tik Systems, Incorporated, advised in writing on or about the 31st day of December, 1947 of the interest of Ar-Tik as assignee of Oltz and that the 4¢ royalty should thereafter be paid directly to Ar-Tik. With but a very few exceptions (which the parties hereto agree are immaterial and involve special problems) all operators thereafter paid their royalty per gallon of mix directly to Ar-Tik. After May 18, 1954, a small percentage of the operators made some allegations that their obligations ceased because of the termination of Patent No. 2,080,971 and the amount of their delinquent royalty payments is the principal subject of this lawsuit, along with certain delinquencies which have existed for a long period of time in the Rockford, Illinois area and elsewhere. In the fourth place, it is apparent that Oltz and McCullough have developed a relationship and a joint interest together with joint rights which gives them far greater rights relative to the Dairy Queen business than the bare rights which surround a patent. It is obvious that these parties have, through their joint efforts, created a national enterprise which is so interrelated as to at least impose considerable responsibilities and obligations upon each store operator to maintain his part in the whole scheme of things. McCullough developed and established the name Dairy Queen that had property value of great worth from which he should not be divested without his consent. We believe this evidence shows that Oltz and Ar-Tik assisted in that development to the benefit of all concerned and that the store operator and other franchise holders may not lightly dispose

of their obligations toward the basic source of this business. For so long as the franchise holder continues to use machines manufactured under the agreement, or for so long as he continues to use the name "Dairy Queen" in connection with his business, he is subject to the rights of either Oltz or McCullough which have developed either by virtue of contract or by the acquisition and development of the trade name in connection with this business.

It is also undisputed that Harry M. Oltz has also acquired Patent Number 2,506,101 as an improvement to Patent Number 2,080,971 and that this has been made available to McCullough. The Court holds that there is liability under the contract up to the present time and that plaintiff is entitled to an accounting for the royalties due under the contract. If the parties are unable to agree upon a method of such accounting within 30 days the Court will, upon motion, appoint a master to make such accounting.

■ The Court therefore holds that there is nothing illegal nor contrary to public policy in the agreement between McCullough and Oltz. That contract, together with all their subsequent dealings and their joint activities in the development of the Dairy Queen business indicated an intention that the rights and duties of the parties should extend beyond the life of any patent. No authority has been cited and the Court has been unable to find any to prevent two competent contracting parties from providing for payments indefinitely, as was done here. Where the parties contract on this basis there would therefore be no obstacle to the enforcement of that contract. McCullough must therefore account to Oltz' assignee Ar-Tik for the unpaid royalties on all machines which were manufactured under the said agreement and which are still in operation in the Dairy Queen business.

■ The defendants apparently now admit that they should be liable for the 4¢ royalty which they have in fact collected from the franchise and subfranchise holders but they seriously contend that they should not be held responsible for the collection of the delinquent accounts for the benefit of the plaintiff. With this contention the Court is unable to agree. The answer to it is simply that this is precisely what McCullough contracted to do when he agreed that the royalty should be paid to Oltz. So far as we are able to determine, the parties holding through McCullough cannot escape their liability to Oltz and the necessary litigation will be routine. There may be some apparent hardship but inasmuch as all parties will benefit from this policing of the national business the Court cannot see any basis for rewriting the contract between the parties. McCullough is also probably in a better position to enforce the franchise and subfranchise payments by virtue of the ownership he has developed in the name "Dairy Queen" and the integration of freezers made under the said agreement, the rights under which he can undoubtedly enforce by injunction.

Plaintiff may, within ten (10) days prepare findings of fact and conclusions of law drawn in accordance with this opinion, and defendants may, within ten (10) days after plaintiff has lodged its findings and conclusions with the Court, file their exceptions and suggested additions thereto.