Ernie F. MILLER, Plaintiff in Error,

v.

C. K. BARNES, Defendant in Error.

No. 39952.

Supreme Court of Oklahoma.

March 26, 1963.

Rehearing Denied April 23, 1963.

Gene T. Ritter, Ardmore, for plaintiff in error.

Charles Dunn, Tulsa, for defendant in error.

BERRY, Justice.

The parties will be referred to herein as they appeared in the trial court which is in reverse order to their appearance here.

The basic issue presented by this appeal is whether the trial court erred in finding that defendant was not privileged to use the name "Dairy Queen" in connection with a retail iced milk or soft ice cream business which defendant operated in Ardmore, Carter County, Oklahoma.

The undisputed relevant facts bearing upon the mentioned issue can be summarized thusly:

In the 1930's Harry M. Oltz applied for and was granted a patent on an appliance that was designed for use in manufacturing frozen milk or soft ice cream. Thereafter in 1939 J. F. and H. A. McCullough entered into an agreement with Oltz. Under the terms of the agreement, the McCulloughs obtained the right to manufacture and use the machines for an agreed royalty in Oklahoma and a number of other western states during the effective date of the patent. The patent expired in 1954.

In 1946 the McCulloughs entered into a contract in writing with L. E. Copelin. It was stated in the contract that the McCulloughs possessed "a certain formula together with the production methods and machinery requirements for the preparation, sale and distribution of a certain product known as DAIRY QUEEN and has agreed to grant to the party of the second part an exclusive franchise for the manufacture, preparation, sale and distribution of DAIRY QUEEN, within the territory and upon the terms" therein set forth; that for a stated consideration the McCulloughs granted to Copelin "the sole and exclusive right and franchise for the manufacture, preparation, sale and distribution of DAIRY QUEEN within the State of Oklahoma, subject to" certain conditions; that the "Dairy Queen product is a registered trade name and (was) registered in" Oklahoma; that Copelin would purchase a stated number of machines.

The record shows that McCulloughs caused the trade-mark "Dairy Queen" to be registered in Oklahoma on April 18, 1946, and had theretofore registered same in the State of Illinois.

Prior to May 20, 1948, several Dairy Queen businesses had been established in Oklahoma but none had theretofore been established in Carter County. On the mentioned date, Copelin and E. H. Parry entered into a contract in writing. It was therein stated that Copelin owned an "exclusive franchise for the preparation, sale and distribution of a certain product known as Dairy Queen", and agreed to grant to Parry the right to prepare, sell and distribute said product in Carter County, Oklahoma. Copelin further agreed to furnish Parry with the formula used in preparing Dairy Queen, to assist Parry in obtaining ingredients mentioned in the formula and supply two machines used in manufacturing the product. Copelin retained title to the machines. The consideration passing to Copelin was a stated amount for Parry's use of the machines and a stated royalty based upon each gallon of "mix" used in the machines.

Parry, as contemplated by the last mentioned agreement, promptly caused a Dairy Queen business to be established in Ardmore. In 1952, Parry sold to defendant a one-half interest in the business and the rights that Parry had acquired under his franchise agreement with Copelin. In 1958 Parry sold his remaining interest to defendant. Prior to defendant's acquiring all of Parry's interest, the business was operated as "Dairy Queen". Thereafter defendant operated the business under the name "Miller's Dairy Queen".

On January 9, 1959, Copelin and plaintiff entered into an agreement in writing.

By the terms of this agreement Copelin sold and assigned to Barnes all of Copelin's "right, title and interest in and to the exclusive franchise covering the territory of Atoka, Bryon, Murray, Garvin, and Carter Counties in the State of Oklahoma, as herein above set out with the exclusive right to use the name Dairy Queen within the said territory" which rights as to the mentioned counties were those acquired under Copelin's agreement with the McCulloughs.

In September, 1959, defendant failed to pay the royalties provided in the Parry agreement with Copelin. Following demand for payment and defendant's refusal to pay, plaintiff called at defendant's place of business and took possession of the machines that Copelin had delivered to Parry. The machines had at all times been used in manufacturing Dairy Queen.

It appears that the McCulloughs obtained machines from two manufacturing concerns. Following removal of the machines used by defendant, defendant undertook to purchase machines from said concerns. Following their refusal to sell, defendant acquired machines from a different concern and thereafter used same in manufacturing iced milk and selling same as Dairy Queen.

In establishing the product "Dairy Queen" in this and other states, a considerable sum was expended in advertising. No portion of the cost was directly borne by defendant.

As to repairing the machines furnished defendant, the parties appear to agree that defendant was obligated to make minor repairs and Copelin or plaintiff the major repairs. Defendant testified that prior to 1959 machines used in his business were "worn out"; that he so advised Copelin and plaintiff; that he requested that major necessary repairs be made or that he be furnished or permitted to buy new machines; that the request was denied. There was evidence that the machines were not worn out and would never wear out; that while certain parts thereof would become worn they could be replaced. We add, that

defendant does not, as we read his brief, contend that because of Copelin's and plaintiff's alleged breach of the contract with Parry, defendant was justified in acquiring new machines and continuing to operate his confection business as a Dairy Queen business. To the contrary his contention is premised on other contentions which are discussed herein.

For other facts bearing upon establishment and conducting of the Dairy Queen business, see Medd et al. v. Boyd Wagner, Inc., et al. (D.C.), 132 F.Supp. 399; Ar-Tik Systems v. H. A. McCullough et al. (D.C.), 133 F.Supp. 807; and Ar-Tik Systems v. Dairy Queen, Inc., (3rd Cir.) 302 F.2d 496.

In support of his petition in error, defendant advances these contentions: "1. The words 'Dairy Queen' standing alone are not the subject of exclusive appropriation as a 'tradename' for an ice milk product"; "2. The defendant has the exclusive right to the use of the name 'Dairy Queen—The Cone With the Curl on Top' not only because of the fact that it was trademarked by his association, but because he and his assignor, E. H. Parry, were the first to appropriate it and to use it in Carter County, Oklahoma"; "3. The patent on the Harry M. Oltz freezer expired on the 18th day of May, 1954, and with the expiration of that patent all of Copelin's rights ceased and terminated, save and except his right to collect royalties on the product which Miller ran through his machines after that date"; "4. Even if Copelin or Barnes ever had the right to use the name 'Dairy Queen—The Cone With the Curl on Top', they lost it by abandonment". We will consider these contentions in the order that they are above stated.

As we understand the argument advanced by defendant under his first contention, he asserts that the name "Dairy Queen" is not indicative of the origin or ownership of a product; that it relates to a product only and therefore must be considered as generic.

A like contention was made in Medd v. Boyd Wagner et al., supra. In that case those owning and possessing the exclusive right to use the name "Dairy Queen" sought to enjoin persons engaged in selling ice milk at retail in Ohio from using the name "Dairy Queen" in connection with such sales and business. In rejecting the contention this was said in the body of the opinion:

"* * On the other hand, the trade name 'Dairy Queen' connotes an ice milk product and the organization which dispenses that product; it connotes a style and method of doing business, a uniform plan of retailing the ice milk product in prototype buildings that are distinctive from other stores dealing in similar products, and the name, therefore, is not generic to the machine. If, as we conclude from the evidence, the trade name is not the generic name in the public mind for the patented machine, then the right to the exclusive use of the trade name continues in the patentee despite expiration of the patent. Telechron, Inc. v. Telicon Corp., 3 Cir., 198 F.2d 903; Ironite Co. v. Cement Waterproofing & Ironite Co., D.C., 20 F.Supp. 603; Prest-O-Lite v. Davis, 6 Cir., 215 F. 349."

We think the quoted reasoning is sound and that it is applicable to the facts presented by this appeal.

We also note that this is said in 87 C.J.S. Trade-Marks, Etc., § 95, p. 338:

"It is the duty of a subsequent trader coming into an established trade not to dress up his goods or market them in such a way as to cause confusion between his goods or business and that of a prior trader. Even conceding that the later trader has an equal abstract right to use particular words, names, or marks, if his unexplained use of them will cause confusion and deception, he must accompany such use with affirmative distinguishing features sufficient to render deception improbable, and this rule applies to all classes of marks and names, including descriptive, generic, personal, and geographical names, which, although primarily publici juris, have acquired a secondary meaning. * * *"

As to defendant's second contention, he argues that Parry was the first to use the name "Dairy Queen" in Carter County; that he and defendant have since then used the name; that they were the ones who in fact established the "Dairy Queen" name and business in Carter County; that Carter County constitutes a market or trade territory for Dairy Queen; that defendant as Parry's successor in interest, therefore, has the exclusive right to use the name in Carter County.

In support of his argument defendant quotes from 52 Am.Jur. "Trademarks, Tradenames, etc", Sec. 25, p. 520. The pertinent portions of the quotation appear to be that "The right to the exclusive use of a particular mark or name as a trademark or tradename is ordinarily founded on priority of appropriation; that is, the claimant of the trademark must have been the first to use or employ the mark on like articles of production in the same market or competitive territory."; that "The general rule, subject to certain qualifications hereinafter noted, is that the right acquired by the prior appropriation and use of a trademark is exclusive in character, within the scope or field of its operations."

The record clearly shows that the name "Dairy Queen" had been coined and used in establishing the Dairy Queen business prior to Parry's using the name in Carter County. In fact, at the time Parry began using the name it had been registered in Oklahoma and had been used in connection with Dairy Queen businesses established in Oklahoma prior to Parry's establishing such a business at Ardmore. It follows, that Parry and defendant were not the first to use or employ the name, therefore, defendant's argument is lacking in merit unless Carter County is considered as a separate and distinct trade territory from the re-

mainder of the state. We do not believe that such is the case.

It is a matter of common knowledge that motorists who are residents of other states and of other counties in Oklahoma daily travel through Ardmore. Many of said motorists no doubt have and will buy Dairy Queen at Ardmore. In some instances their purchases could be attributable to the advertising of Dairy Queen and the fact that they have bought that product at Dairy Queen establishments in other states and in other counties in Oklahoma. For said reason we do not believe that Carter County at relevant time could properly be considered as a separate or distinct trade territory for the manufacture and sale of Dairy Queen.

As to defendant's third contention, the trial court did not render judgment in favor of plaintiff for royalties that he claimed and for said reason the issue of whether plaintiff would be entitled to royalties is not presented by this appeal.

Under defendant's fourth and remaining proposition, defendant argues that if Barnes ever had any right to use the name "Dairy Queen—The Cone With the Curl on Top" he abandoned the right by not using cones and containers that bear the quoted phraseology. The basic issue presented by the pleadings was whether defendant was or was not privileged to use the name "Dairy Queen" in connection with the retail ice milk business that he conducted in Ardmore following termination of his franchise and not whether he was privileged to use cones, containers or other material which bore the phrase last above quoted. The findings, conclusions and judgment of the trial court were limited to the mentioned issue and, therefore, did not treat with the last mentioned subject. It follows, that the issue argued under defendant's fourth contention is not before this Court. We add, that if the issue could be considered as being before us there is competent and we believe conclusive evidence, that the quoted phrase was coined and used by others in the Dairy Queen business prior to Parry and defendant using same.

In concluding we note that defendant does not urge that his use of the name "Miller's Dairy Queen" in conducting his business at Ardmore will not cause members of the public to conclude that his place of business is in fact a Dairy Queen business. To the contrary, as heretofore pointed out, he argues that under the facts it is his privilege and right to conduct a Dairy Queen business in Ardmore. For reasons heretofore stated, we disagree.

On repeated occasions we have held that an action such as this is cognizable in equity and that the trial court's finding and judgment in such an action will not be set aside unless an examination of the record shows that same are clearly against the weight of the evidence. See cases cited following Key No. 1009(4), Vol. 2A, West's Okla.Dig., Appeal and Error.

We are of the opinion that the findings, conclusions and judgment herein are not clearly against the weight of the evidence and for said reason the judgment is Affirmed.