## CITIZENS WHOLESALE SUPPLY COMPANY v. THE GOLDEN RULE.[1]

December 3, 1920.

No. 21,908.

**Trade-name — use by department store.**

> The right to a trade-mark or trade-name is determined by priority of adoption and use. Once acquired as appertaining to a certain class of goods, the right of priority extends to all goods of the same general class. A merchant operating a department store may use its trade-mark and name in the sale of all merchandise reasonably incident to the conduct of a department store. If a line of groceries is taken on, the mark and name may be used in connection with that department.

Action in the district court for Ramsey county to restrain defendant from preparing, putting up and offering for sale any imitation of plaintiff's articles or any articles bearing the name of "Golden Rule," for an accounting and recovery of all profits realized by defendant upon sales of such articles. The answer, among other matters, alleged that in 1886 certain persons formed a copartnership doing business as The Golden Rule and in 1905 defendant corporation succeeded to all the rights and liabilities of that copartnership, and was carrying on identically the same business as was carried on by the copartnership upon the same premises. The case was tried before Haupt, J., who made findings and ordered judgment in favor of defendant dismissing the action. From an order denying its motion for amended findings or for new trial, defendant appealed. Affirmed.

*Henderson & Decourcy,* for appellant.

*C. D. & R. D. O'Brien,* for respondent.

HALLAM, J.

In 1886 Wm. H. Elsinger, Joseph Elsinger and Jacob Dittenhofer formed a partnership, and under the partnership and trade-name of the "Golden Rule," conducted a retail department store in Saint Paul. In

[1]Reported in 180 N. W. 95.

1896 they registered, in the office of the secretary of state, their trade-mark, which embodied the name "Golden Rule." In 1905 these persons formed a corporation under the name "The Golden Rule" and transferred their partnership business and trade-mark and name to the corporation. During the years from 1886 to the present, the partnership and corporation, successively, have used said trade-mark in the advertisement and sale of their merchandise and under that name have built up a large trade in the various articles sold in department stores.

In 1915 defendant added a grocery department to its various other lines, and since that time has sold groceries, including canned goods and goods put up in packages, and has sold these articles under the trade-name and mark of the "Golden Rule."

Plaintiff is an Ohio corporation engaged in the manufacture and sale of groceries, put up and sold in cans and packages, and in 1911 it registered with the secretary of state of Minnesota, a trade-mark which embraced the words "Golden Rule," and since that time it has sold its products in Saint Paul and other parts of Minnesota. Plaintiff now seeks to enjoin defendant from selling articles bearing the name "Golden Rule" which may be similar in character to those sold by plaintiff. The trial court denied plaintiff any relief and plaintiff appeals.

In our opinion the trial court should be sustained. Defendant and its predecessor in interest used the trade-name "Golden Rule" and used the same name in its trade-mark, long before the advent of plaintiff's goods into the Minnesota field.

The right to a trade-mark or trade-name is determined, not by registration, but by priority of adoption and use. A merchant who employs his trade-mark in connection with a particular class of goods acquires priority of right to use it in connection with that class of goods. Priority of right is, however, limited to use upon that particular class of goods. Another person may apply the same mark to goods of a different class. 38 Cyc. 694.

For example, the first use of a trade-mark upon a brand of canned fruits and vegetables gave no priority of use upon packed salmon. George v. Smith, 52 Fed. 830.

The use of the word "royal" in connection with a brand of mustard

gave no right to its use to designate a flavoring extract. Royal Baking Powder Co. v. Sherrill, 59 How. Prac. (N. Y.) 17.

Once acquired, as appertaining to a general class of products, the right of priority extends to all goods of the same general class, even to goods not previously manufactured or sold. The question whether certain goods are within the general class depends in some measure on the nature of the business in which the mark or name is used. Where the business of the manufacturer or merchant is general, the use of the mark may cover a considerable variety of articles. 38 Cyc. 685.

In Collins & Co. v. Ames, 18 Fed. 561, plaintiff had the right to make all articles of metal, but had only made edged tools, including hatchets, picks, mattocks and hoes. It had not manufactured shovels. Defendant manufactured shovels and stamped them with the same trade-mark and introduced them into a market in which plaintiff's goods were much in demand. It was held that plaintiff's priority of right of use of the mark extended to shovels.

In Eastman Co. v. Kodak Cycle Co. 15 Rep. Pat. Cas. (Eng.) 105, complainant was a manufacturer of cameras under the name of "kodak." Defendant, under the name of "Kodak Cycle Company," began the manufacture of bicycles, calling them "Kodak" cycles. Complainant was held entitled to an injunction to restrain the use of the word "kodak." The court said to allow such use by defendant "would be to allow this company certainly to cause confusion between it and the plaintiff company * * * and would cause the defendant company to be * * * recognized by the public as being connected with it."

In Dunlop Pneumatic Tire Co. v. Dunlop Lubricant Co. 16 Rep. Pat. Cas. (Eng.) 12, it appeared that the word "Dunlop" was first used by complainant's predecessors to designate goods manufactured by them, namely, bicycle tires, rims, pumps and other accessories. Defendant started in business as the "Dunlop Lubricant Company" and dealt in oils and lubricants for bicycles which he sold in packages bearing the word "Dunlop" in large letters. This use of the word "Dunlop" was enjoined, though complainant had never dealt in oils or lubricants.

In Florence Mnfg. Co. v. J. C. Dowd & Co. 178 Fed. 73, 101 C. C. A. 565, it was held that a manufacturer of hair brushes under the trademark "Keepclean," who did not make tooth brushes, is entitled to be

protected against one who manufactures tooth brushes under the trade-mark "Sta-Kleen."

In Aunt Jemima Mills Co. v. Rigney & Co. 247 Fed. 407, 159 C. C. A. 461, L.R.A. 1918C, 1039, it was held that a trade-mark, adopted for use on pancake flour, cannot be used by another person for a different but correlated article, such as syrup or sugar cream.

In this case, defendant's trade-mark and name was used in connection with the manufacture and sale of all goods sold by it in its department store. Defendant was protected in its use, not only in connection with goods previously sold, but also in its application to all goods coming within the scope of the activities of a department store. We are of the opinion that when it took on its line of groceries, it took a line reasonably incident to the conduct of a department store and that it was within its rights in using its trade-mark and name in connection with sales made in this department, and that plaintiff's claim of priority must fail.

Affirmed.