STATE of Minnesota, by its Lottery Director, George ANDERSEN, and its Attorney General, Hubert H. Humphrey, III, Respondent,

v.

REWARD CORPORATION, Appellant.

No. C3–91–2143.

Court of Appeals of Minnesota.

March 24, 1992.

Review Denied May 15, 1992.

---

Hubert H. Humphrey, III, Atty. Gen., E. Joseph Newton, Special Asst. Atty. Gen., St. Paul, for respondent.

William H. Henney, Minnetonka, for appellant.

Considered and decided by HUSPENI, P.J., and RANDALL and SHORT, JJ.

## OPINION

HUSPENI, Judge.

Appellant alleges the trial court erred when it permanently enjoined appellant from using two business names and ordered the Secretary of State to strike the names from the register. We affirm.

## FACTS

Appellant Reward Corporation is a small business specializing in retail marketing and promotion. On April 27, 1989, appellant filed three "requests for reservation of corporate name" with the Secretary of State for three names: "Minnesota Lottery," "Minnesota Lotto," and "Pick 5."[1] Appellant has not incorporated under any of these names, nor has it used the names in any business activity. Although appellant had created some designs and ideas for the games, it did not produce anything under either "Minnesota Lottery" or "Minnesota Lotto." Appellant did present a model "Pick 5" game card as an exhibit at trial but never produced the "Pick 5" game because of logistic complications.[2] Appellant asserted that this business inactivity was due to financial difficulties.

Appellant knew that respondent State of Minnesota was establishing a state lottery at the same time appellant was planning its venture. According to appellant, the main distinguishing characteristic between appellant's "Minnesota Lottery" and respondent's "Minnesota State Lottery" was that patrons would not need to pay to play appellant's lottery game.

After the Minnesota legislature passed the law creating a state-operated lottery in May 1989, the governor, legislators and general public began referring to the "Minnesota Lottery." In June 1989, appellant requested that respondent "cease and desist" in using the names "Minnesota Lottery" and "Minnesota Lotto" to refer to the state lottery because appellant had reserved these names for use in its business.

On November 3, 1989, respondent registered the name "Minnesota State Lottery" with the Secretary of State, who approved and allowed the registration.[3] Ap-

---

1. The Secretary of State renewed appellant's reservation of the trade names annually in April 1990 and April 1991.

2. Respondent did not seek an injunction of appellant's "Pick 5" operation.

3. In addition, respondent applied to the United States Patent and Trademark Office for trade name registration of "Minnesota State Lottery" and "Lotto Minnesota." Registration is still pending for the former name; the latter has been placed on the register.

pellant then wrote a second cautionary letter to respondent and filed a "Notice of Contest" with the Secretary of State, pursuant to Minn.Stat. § 5.22, subd. 1 (Supp. 1989). That notice alleged that respondent's business names were deceptively similar to appellant's reserved names.

Respondent brought this action in February 1990 to enjoin appellant's use of its reserved names. The trial court initially granted respondent a temporary injunction and denied both parties' motions for summary judgment. After a trial, the court permanently enjoined appellant from using the names "Minnesota Lottery" and "Minnesota Lotto." Further, the court ordered the Secretary of State to strike the names from the register. Appellant brings this appeal directly from the court's judgment.

## ISSUES

1. Did the trial court err when it concluded that appellant violated the Minnesota Business Corporations Act by registering the trade names "Minnesota Lottery" and "Minnesota Lotto"?

2. Did the trial court err in permanently enjoining appellant from use of the trade names and in removing the names from the state register?

## ANALYSIS

Appellant made no post-trial motions and appeals directly from the court's judgment. Where a party fails to bring alleged errors to the attention of the trial court in a motion for new trial, this court's review of the case is limited to whether the evidence supports the findings and whether the findings support the conclusions of law. *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976).

### I.

■ Appellant argues first that it had no illegal purpose in reserving its names and thus has not violated the law. We cannot agree.

When selecting a corporate name, a party shall not use a "word or phrase that indicates or implies that it is incorporated for a purpose other than a legal business purpose." Minn.Stat. § 302A.115, subd. 1(c) (1990). Article 13, section 5 of the Minnesota Constitution provides:

The legislature shall not authorize any lottery or the sale of lottery tickets, other than authorizing a lottery and sale of lottery tickets for a lottery operated by the state.

Minn.Stat. ch. 349A (1990) codifies that constitutional mandate and authorizes the State of Minnesota to operate a state lottery system. Any other person who "conducts a lottery, or, with intent to conduct a lottery, possesses facilities for doing so" commits a gross misdemeanor. Minn.Stat. § 609.76, subd. 1(a)(3) (1990). A "lottery" is:

a plan which provides for the distribution of money, property or other reward or benefit to persons selected by chance from among participants some or all of whom have given a consideration for the chance of being selected.

Minn.Stat. § 609.75, subd. 1(a) (1990). In contrast, an in-package chance promotion is not a lottery by definition if "participation is available, free and without purchase of the package, from the retailer." *Id.*, subd. 1(b)(1).

The trade names appellant chose imply on their faces that appellant would incorporate for the purpose of operating a state lottery program. Such conduct by a private entity is illegal; only the state may operate a lottery. Minn.Stat. § 609.76, subd. 1(a)(3). Appellant asserts its proposed games would not be pay-to-play lotteries, but rather would be free to retail customers. In that case, the names "Minnesota Lottery" and "Minnesota Lotto," do not properly represent appellant's business. These names suggest nothing other than a traditional lottery game operated by the state. Thus, despite appellant's stated intentions, its chosen trade names imply an illegal business purpose. The trial court properly concluded that appellant has violated Minn.Stat. § 302A.115, subd. 1(c).

### II.

■ Although we affirm the trial court on the ground that appellant's use of the names "Minnesota Lottery" and

"Minnesota Lotto" implies an illegal business purpose and thereby violates the Business Corporations Act, Minn.Stat. § 302A.115, subd. 1(c), we also conclude that Minn.Stat. § 302A.117, subds. 1, 2 (1990) are not susceptible to the broad interpretation appellant would have us give it.[4] While the statute grants "the exclusive right to the use of the corporate name" to the person who reserves it, *id.*, such reservation cannot ensure that the name is not already being used in the course of commerce by another party. We agree with the trial court that the state established a protectable interest in its trade name through actual use of the name in business.

■■■ This narrow interpretation of Minn.Stat. § 302A.117 finds support in a long history of case law that requires an owner to present evidence of actual use of the trade name in business, in advertising or in sale of goods in order to establish a protectable interest;[5] registration alone is not sufficient. *Neely v. Boland Mfg. Co.*, 274 F.2d 195, 202 (8th Cir.1960); *Aveda Corp. v. Evita Marketing Corp.*, 706 F.Supp. 1419, 1427 (D.Minn.1989); *Citizens Wholesale Supply Co. v. The Golden Rule*, 147 Minn. 248, 249, 180 N.W. 95, 96 (1920). While registration or reservation of a trade name is prima facie evidence of the validity, ownership and right to use the name, that registration creates a rebuttable presumption; the owner still must prove the infringement of the trade name to which he claims the "right." *General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 626 (8th Cir. 1987).

No rights accrue to one who merely selects a trademark without actual use of it in the advertising or sale of goods.

*Aveda Corp.*, 706 F.Supp. at 1427; *see also Griesedieck W. Brewery Co. v. Peoples Brewing Co.*, 149 F.2d 1019, 1022 (8th Cir. 1945) (only by use of the mark is the right of the trademark owner protected). The court requires proof of use because the trademark infringement cause of action serves to protect a company's goodwill. *Minneapple Co. v. Normandin*, 338 N.W.2d 18, 22 (Minn.1983).

The purpose of trademark law is to protect the public from confusion regarding the sources of goods or services and protect business from diversion of trade through misrepresentation or appropriation of another's goodwill.

*Id.* "Goodwill" relates to a business' credibility and reputation for fair dealing and integrity. *Lawyers Title Ins. Co. v. Lawyers Title Ins. Corp.*, 109 F.2d 35, 38 n. 5, 43 n. 38 (D.C.Cir.1939), *cert. denied*, 309 U.S. 684, 60 S.Ct. 806, 84 L.Ed. 1028 (1940).

Here, the parties acknowledge that appellant reserved its trade names before respondent registered its names. However, appellant never actually *used* the names at issue here. Appellant never educated the public about its product or developed any reputation, any recognition, or any goodwill of its business. In contrast, respondent put its names to use immediately after registration and has established a nearly statewide understanding of the name "Minnesota State Lottery" as a state-operated game that yields a chance at winnings. After such use and public recognition, the

---

**4.** Minn.Stat. § 302A.117, subd. 1(a), (b) (1990) provides:

The exclusive right to the use of a corporate name * * * may be reserved by a person doing business in this state under that name [or] a person intending to incorporate under this chapter.

**5.** For the purpose of a thorough analysis, we note that "general principles of trademark law apply to trade names." *Imported Auto Parts Corp. v. R.B. Shaller & Sons, Inc.*, 258 N.W.2d 797, 799 n. 2 (Minn.1977), *cited in North Star State Bank v. North Star Bank Minnesota*, 361 N.W.2d 889, 894 (Minn.App.1985), *pet. for rev. denied* (Minn. Apr. 26, 1985). Characteristical-

ly, however, trade names are distinct from trademarks; trade names distinguish businesses while trademarks distinguish goods. *Imported Auto Parts*, 258 N.W.2d at 799 n. 2. Although distinct, a trade name may function as a trademark when used in association with the company's goods and services. *See Yellow Cab Co. v. Cooks Taxicab & Transfer Co.*, 142 Minn. 120, 123, 171 N.W. 269, 271 (1919). Similarly, a corporate name is the functional equivalent of a trade name, and is thus afforded the same protections and requires the same elements. *Lawyers Title Ins. Co. v. Lawyers Title Ins. Corp.*, 109 F.2d 35, 41 (D.C.Cir.1939), *cert. denied*, 309 U.S. 684, 60 S.Ct. 806, 84 L.Ed. 1028 (1940).

danger of appellant infringing upon respondent's trade name becomes apparent. The public would expect the Minnesota lottery to be affiliated with the state, and be certified, approved and operated by the state since the state is the only entity authorized by law to conduct the lottery. Use of that name in conjunction with a game other than the state-operated lottery would likely deceive and mislead the public.

■■■■ The court may enjoin any conduct likely to damage another by deceptive trade practices. Minn.Stat. § 325D.45 (1990). The Minnesota Deceptive Trade Practices Act declares:

> A person engages in a deceptive trade practice when, in the course of business * * *, the person:
>
> (1) passes off goods or services as those of another;
>
> (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
>
> (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;
>
>     \*    \*    \*    \*    \*    \*
>
> (5) represents that goods or services have sponsorship, approval, characteristics * * * that they do not have;
>
>     \*    \*    \*    \*    \*    \*
>
> (13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Minn.Stat. § 325D.44, subd. 1(1), (2), (3), (5), (13) (1990). A corporate name is "deceptively similar" to the name of another business

> only if the similarity tends to deceive the ordinary purchaser as to the identity of the goods whereby he is led to believe that he is getting [respondent's] product when he is in fact getting that of [appellant].

*Howards Clothes, Inc. v. Howard Clothes Corp.*, 236 Minn. 291, 295–96, 52 N.W.2d 753, 757 (1952). Although appellant charges respondent with allegedly deceptive trade practices, the facts of this case reveal, to the contrary, that appellant poses this threat to respondent.

Thus, we conclude that through the use of the name "Minnesota State Lottery" respondent has acquired the protectable interest in the name necessary to warrant an injunction. The trial court properly enjoined appellant from using its trade names because they implied an illegal purpose, were deceptively similar to respondent's names already in use, and would have infringed on respondent's interest in its registered trade name.

## DECISION

Appellant violated the Minnesota Business Corporations Act when it reserved the trade names "Minnesota Lottery" and "Minnesota Lotto" because the names imply an illegal business purpose; only the State may operate a lottery in Minnesota. The trial court properly enjoined appellant permanently from using these trade names because they implied an illegal purpose, were deceptively similar to respondent's names already in use, and would have infringed upon respondent's registered trade names.

Affirmed.

SHORT, J., concurring specially.

SHORT, Judge (concurring specially).

I concur only because Reward Corporation failed to use the reserved names in the course of commerce and thus did not gain a protectible interest in the trade names. *See Allen Homes, Inc. v. Weersing*, 510 F.2d 360, 362 (8th Cir.1975), *cert. denied*, 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975); *Aveda Corp. v. Evita Marketing, Inc.*, 706 F.Supp. 1419, 1427 (D.Minn.1989). Reward's failure to use the names makes it unnecessary for us to address any issues regarding the propriety of its reservation or use of the names.